**UNITED STATES of America ex rel. McKinley WILLIAMS, Petitioner-Appellant,**

v.

**Hon. Harold W. FOLLETTE, Warden of Green Haven State Prison, Stormville, N. Y., Respondent-Appellee.**

No. 48, Docket 30964.

United States Court of Appeals
Second Circuit.

Argued Sept. 10, 1968.

Decided March 20, 1969.

Lumbard, J., dissented.

Gretchen White Oberman, New York City (Anthony F. Marra, New York City, on the brief), for petitioner-appellant.

Murray Sylvester, Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal by McKinley Williams from an order of the United States District Court for the Southern District of New York, Thomas F. Croake, J., denying, without a hearing, his application for a writ of habeas corpus. Reversed and remanded for a hearing to determine the voluntariness of Williams' guilty plea.

On January 23, 1956, Mabel Cummings was held up with a toy pistol, raped, and robbed. Two days later Williams was arrested, and while in police custody he confessed. On March 16, 1956, he appeared in Bronx County Court and entered a plea of guilty on the advice of his lawyer. On April 19, 1956, Williams was convicted of second degree robbery on his plea of guilty and was sentenced to 7½ to 15 years in prison as a second felony offender. No appeal was taken from the judgment of conviction.

In 1964 petitioner applied for a writ of error *coram nobis* to vacate this conviction. In his petition, Williams stated that he was arrested without a warrant and taken to the Simpson Street police station where he was held on an "open" charge, that he was held for 16 hours before being arraigned, that he was handcuffed to a desk while interrogated by police about a two-day old crime, that he was threatened with a pistol and physically abused, that he was not informed of his right to counsel, and that he gave a confession out of fear and exhaustion. He also alleged that he was inadequately represented by assigned counsel; that he did not want to plead guilty; that his attorney (who was later disbarred), knowing of an alibi defense, talked him into pleading guilty and misled him into thinking that he was pleading guilty to a misdemeanor rather than a felony. He allegedly was not told of the consequences of his plea or the nature or meaning of the charge. Faced with the allegedly coerced confession, and the New York procedure, later declared unconstitutional in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964), whereby the jury would determine the voluntariness of his confession, Williams entered the guilty plea.

His writ was denied without a hearing in the state courts, and thereupon Williams applied for a writ of habeas corpus in the United States District Court for the Southern District of New York. Judge Croake denied Williams' petition without a hearing on the basis of United States ex rel. Glenn v. McMann, 349 F.2d 1018, 1019 (2 Cir. 1965), cert. denied 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669 (1966), where we said that "a voluntary plea entered on advice of counsel is a waiver of all non-jurisdictional defects in any prior stage of the proceedings." In addition, Judge Croake said that he had some difficulty accepting "the assertion that the right to go to trial was relinquished because [petitioner] believed he would not receive a fair determination on the issue of voluntariness," since Williams entered his plea of guilty almost eight years prior to the Supreme Court decision in Jackson v. Denno, *supra*.

■■■■ In United States ex rel. Ross v. McMann, 409 F.2d 1016 (2 Cir. February 26, 1969) (en banc), and its companion case, United States ex rel. Dash v. Follette, 409 F.2d 1016 (2 Cir. February 26, 1969) (en banc), we held that while a voluntary guilty plea constitutes a waiver of all non-jurisdictional defects, a conviction based on a guilty plea is open to collateral attack if the petitioner can show that the plea was not in fact *voluntary*. Explaining that it was wrong to read *Glenn* as an absolute bar to collateral attack when there is an issue as to the motivation of the plea, we said that there must be a hearing where the constitutional violations alleged are not irrelevant to the issue of voluntariness. "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962). The applicable principle was stated by the Supreme Court in Townsend v. Sain, 372 U.S. 293, 312–313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963):

> Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other

words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.

In *Ross* and *Dash* we also rejected the argument that defendants who refused to run the pre-*Jackson* gantlet could be said to have deliberately waived the right to test the voluntariness of their confessions. "The petitioner cannot be deemed to have waived his coerced confession claim by deliberately by-passing state procedures when the state failed to afford a constitutionally acceptable means of presenting that claim, and he cannot be deemed to have entered a voluntary plea of guilty if the plea was substantially motivated by a coerced confession the validity of which he was unable, for all practical purposes, to contest." United States ex rel. Ross v. McMann, *supra* at 1024 of 409 F.2d.

■■■ For the reasons set forth in *Ross* and *Dash*, we think that the allegations in Williams' petition are sufficient to require a hearing on the voluntariness of his guilty plea. He says that he was threatened with a pistol and that he confessed to a "tale" narrated by a plainclothesman. He says that the confession was the only evidence against him, an allegation which, if true, makes this an even stronger case than *Ross* or *Dash*. He says that he was not even in the state at the time of the alleged crime. None of these allegations are controverted by the record. Unlike United States ex rel. Rosen v. Follette, 409 F.2d 1042 (2 Cir. February 26, 1969) (en banc), therefore, Williams' petition alleges significantly more than the "rather vague claim that the plea was somehow infected by the confession." at 1045.

Despite six *coram nobis* applications in New York, Williams has never had a state hearing, and yet plainly the allegations in his petition raise questions which cannot be answered by reference to the transcript alone. If petitioner pleaded guilty on the advice of a lawyer who knew of the existence of a perfectly good alibi defense, then there is certainly some question as to whether Williams was adequately represented by counsel when he entered his guilty plea. "[I]t is not for a lawyer to fabricate defenses, but he does have an affirmative obligation to make suitable inquiry to determine whether valid ones exist." Jones v. Cunningham, 313 F.2d 347, 353 (4 Cir.), cert. denied 375 U.S. 832, 84 S.Ct. 42, 11 L.Ed.2d 63 (1965). See also Quarles v. Balkcom, 354 F.2d 985 (5 Cir. 1966), where the Fifth Circuit held that the petitioner, who was incarcerated in a county jail on the date of the alleged crime, was entitled to an evidentiary hearing to show that his guilty plea was a "mistake" and that the plea was induced by inadequate representation of counsel.

Similarly, if petitioner was misled by his lawyer into thinking he was pleading guilty to a misdemeanor, there is some question as to whether the guilty plea was made "intelligently." Compare United States ex rel. Boucher v. Reincke, 341 F.2d 977 (2 Cir. 1965). Indeed, the Supreme Court has said that withdrawal of a guilty plea should be allowed if it has been "unfairly obtained or given through ignorance, fear or inadvertence." Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). Under these circumstances, the petitioner is entitled to an evidentiary hearing to determine whether "the guilty plea was freely made, without infection from the confession and with 'effective assistance of counsel.'" Smith v. Wainwright, 373 F.2d 506, 508 (5 Cir. 1967).

This does not mean, of course, that the petitioner will necessarily prevail on the merits, but we think that he has alleged enough to require a hearing. As we said in *Ross* and *Dash*, the conviction would stand if the habeas judge determined either that the confession was voluntary and that petitioner was represented by competent counsel, or if petitioner was unable to show that the plea was substantially motivated by the confession or the alleged incompetence of assigned counsel.

We reverse and remand with instructions to hear and determine petitioner's application unless a hearing is held by the courts of the state determining under the standards set forth herein the issue of the voluntariness of petitioner's plea within 60 days from the date of issuance of the mandate herein, or such further time as the District Court may for good cause allow.

LUMBARD, Chief Judge (dissenting):

I dissent.

The majority now require the state court, or perhaps the federal court in addition, to inquire into the voluntariness of a plea of guilty entered by Williams in the Bronx County Court in March 1956 to robbery in the second degree in settlement of an indictment which charged 5 felonies including rape and robbery. The trial court must now also inquire into the voluntariness of the confession which Williams claims he made and which he also claims was the inducing cause of his plea of guilty.

For the reasons set forth in my dissenting opinion in United States ex rel. Ross v. McMann, 409 F.2d at pages 1029 to 1036, filed February 26, 1969, I would not require a trial court to inquire into the voluntariness of a plea of guilty entered in a state court prior to the Supreme Court decision in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908, 1 A.L.R.3d 1205 (1964), where the claim is that the plea was induced by an involuntary confession.

In addition it seems to me that the claims of Williams are insubstantial on their face. It seems highly unlikely on this record that the only evidence against Williams could have been his own confession, as he now claims. The charges in the indictment included holding up one Mabel Cummings with a toy pistol, raping her and robbing her. The record discloses no allegations which make it believable that Mabel Cummings could not and would not have testified that Williams was her assailant. Such testimony would usually be sufficient to convict.

Nor is Williams' claim that he had alibi evidence which would have shown that he was out of the state at the time any more believable, as he gives no particulars whatever with respect to such evidence and to his assertion that he advised his attorney of such an alibi and that his attorney failed do do anything about it.

Williams' petition is unbelievable in still another respect—his claim that his lawyer led him into thinking he was pleading to a misdemeanor when he pleaded to robbery in the second degree. This claim is especially incredible in light of the facts that Williams was a second felony offender and that he failed to raise the claim for 8 years.

Of course the state has not yet had reason to refute these claims Williams makes because at the time Judge Croake passed upon them and dismissed the petition without hearing this court had not yet announced its opinion in United States ex rel. Ross v. McMann and related cases. I point out the insubstantiality of the claims not only to emphasize that, in my opinion, there was no need to make any answer to Williams' claims, but also because it seems to me that even under the holding of the majority, and what the majority members of this court said in United States ex rel. Ross v. McMann, it might still be possible for the state to present record evidence of such nature that the petition could be acted upon and dismissed without the calling of any witnesses.

I also refer to these glaring defects in Williams' petition to emphasize the point I made in my dissenting opinion in *Ross* that New York State courts, and subsequently our own federal courts, will be overburdened by the requirement that they spend valuable time in listening to insubstantial claims regarding events so far in the past that memories and records will be so imperfect and incomplete that the court can do little but speculate. Undoubtedly trial judges who must listen to such claims will be able,

readily and speedily in the great majority of cases, to determine that the claims are incredible and almost entirely an exercise in imagination prompted by the reading of opinions, such as those in *Ross*, which suggests facts justifying relief.

I would affirm the judgment of the district court which denied the petition without a hearing.