McMANN, WARDEN, ET AL. *v.* RICHARDSON ET AL.

No. 153. Argued February 24, 1970—Decided May 4, 1970

*Brenda Soloff,* Assistant Attorney General of New York, argued the cause for petitioners. With her on the briefs were *Louis J. Lefkowitz,* Attorney General, *Samuel A. Hirshowitz,* First Assistant Attorney General, and *Lillian Z. Cohen* and *Amy Juviler,* Assistant Attorneys General.

*Gretchen White Oberman* argued the cause for respondents. With her on the brief were *Grace L. Brodsky* and *Kalman Finkel.*

*Michael R. Juviler,* by special leave of Court, argued the cause for the District Attorney of New York County as *amicus curiae* urging reversal. With him on the brief were *Frank S. Hogan, pro se,* and *Bennett L. Gershman.*

*Melvin L. Wulf* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

MR. JUSTICE WHITE delivered the opinion of the Court.

The petition for certiorari, which we granted, 396 U. S. 813 (1969), seeks reversal of three separate judgments of the Court of Appeals for the Second Circuit ordering hearings on petitions for habeas corpus filed by the respondents in this case.[1] The principal issue before us is whether and to what extent an otherwise valid guilty plea may be impeached in collateral proceedings by assertions or proof that the plea was motivated by a prior coerced confession. We find ourselves in substantial disagreement with the Court of Appeals.

---

[1] Our grant of certiorari also included a fourth respondent, another petitioner for habeas corpus, Wilbert Ross. See n. 7, *infra.* However, upon consideration of a subsequent suggestion of mootness by reason of Ross' death, we vacated the Court of Appeals' judgment and remanded to the District Court for the Eastern District of New York with directions to dismiss the petition for habeas corpus as moot. 396 U. S. 118 (1969).

# I

The three respondents now before us are Dash, Richardson, and Williams. We first state the essential facts involved as to each.

Dash: In February 1959, respondent Dash was charged with first-degree robbery which, because Dash had previously been convicted of a felony, was punishable by up to 60 years' imprisonment.[2] After pleading guilty to robbery in the second degree in April, he was sentenced to a term of eight to 12 years as a second-felony offender.[3] His petition for collateral relief in the state courts in 1963 was denied without a hearing.[4]

---

[2] N. Y. Penal Law § 2125, then in effect, provided that first-degree robbery was punishable by imprisonment for an indeterminate term the minimum of which was to be not less than 10 years and the maximum of which was to be not more than 30 years. Under N. Y. Penal Law § 1941, subd. 1, then in effect, conviction for a second felony was punishable by imprisonment for an indeterminate term with the minimum one-half the maximum set for a first conviction and the maximum twice the maximum set for a first conviction.

In addition to the first-degree robbery charge, Dash was also charged with grand larceny and assault.

[3] Waterman and Devine, two men accused of taking part in the robbery along with Dash, did not plead guilty; after a jury trial they were convicted of first-degree robbery, second-degree grand larceny, and second-degree assault and were sentenced to 15 to 20 years' imprisonment. On appeal these convictions were reversed because of the State's use of post-indictment confessions given by one of the defendants in the absence of counsel. *People* v. *Waterman,* 12 App. Div. 2d 84, 208 N. Y. S. 2d 596 (1960), aff'd, 9 N. Y. 2d 561, 175 N. E. 2d 445 (1961). Waterman and Devine then pleaded guilty to assault in the second degree and were sentenced to imprisonment for 2½ to 3 years.

[4] The denial of relief was affirmed by the Appellate Division of the New York Supreme Court, *People* v. *Dash,* 21 App. Div. 2d 978, 252 N. Y. S. 2d 1016 (1964), aff'd mem., 16 N. Y. 2d 493, 208 N. E. 2d 171 (1965).

Relief was then sought in the United States District Court for the Southern District of New York where his petition for habeas corpus alleged that his guilty plea was the illegal product of a coerced confession and of the trial judge's threat to impose a 60-year sentence if he was convicted after a plea of not guilty. His petition asserted that he had been beaten, refused counsel, and threatened with false charges prior to his confession and that the trial judge's threat was made during an off-the-record colloquy in one of Dash's appearances in court prior to the date of his plea of guilty. Dash also asserted that his court-appointed attorney had advised pleading guilty since Dash did not "stand a chance due to the alleged confession signed" by him. The District Court denied the petition without a hearing because "a voluntary plea of guilty entered on advice of counsel constitutes a waiver of all nonjurisdictional defects in any prior stage of the proceedings against the defendant," citing *United States ex rel. Glenn* v. *McMann*, 349 F. 2d 1018 (C. A. 2d Cir. 1965), cert. denied, 383 U. S. 915 (1966), and other cases. The allegation of coercion by the trial judge did not call for a hearing since the prosecutor had filed an affidavit in the state court categorically denying that the trial judge ever threatened the defendant. Dash then appealed to the Court of Appeals for the Second Circuit.

Richardson: Respondent Richardson was indicted in April 1963 for murder in the first degree. Two attorneys were assigned to represent Richardson. He initially pleaded not guilty but in July withdrew his plea and pleaded guilty to murder in the second degree, specifically admitting at the time that he struck the victim with a knife. He was convicted and sentenced to a term of 30 years to life. Following the denial without a hearing of his application for collateral relief in the

state courts,[5] Richardson filed his petition for habeas corpus in the United States District Court for the Northern District of New York, alleging in conclusory fashion that his plea of guilty was induced by a coerced confession and by ineffective court-appointed counsel. His petition was denied without a hearing, and he appealed to the Court of Appeals for the Second Circuit, including with his appellate brief a supplemental affidavit in which he alleged that he was beaten into confessing the crime, that his assigned attorney conferred with him only 10 minutes prior to the day the plea of guilty was taken, that he advised his attorney that he did not want to plead guilty to something he did not do, and that his attorney advised him to plead guilty to avoid the electric chair, saying that "this was not the proper time to bring up the confession" and that Richardson "could later explain by a writ of habeas corpus how my confession had been beaten out of me."

Williams: In February 1956, respondent Williams was indicted for five felonies, including rape and robbery. He pleaded guilty to robbery in the second degree in March and was sentenced in April to a term of $7\frac{1}{2}$ to 15 years. After unsuccessful applications for collateral relief in the state courts,[6] he petitioned for a writ of habeas corpus in the United States District Court for the Southern District of New York, asserting that his plea was the consequence of a coerced confession and was made without an understanding of the nature of the

___

[5] The denial of relief was affirmed without opinion by the Appellate Division of the New York Supreme Court, People v. Richardson, 23 App. Div. 2d 969, 260 N. Y. S. 2d 586 (1965).

[6] The denial of relief on the claims later presented in the Federal District Court was affirmed without opinion by the Appellate Division of the New York Supreme Court, People v. Williams, 25 App. Div. 2d 620, 268 N. Y. S. 2d 958 (1966).

charge and the consequences of the plea. In his petition and in documents supporting it, allegations were made that he had been handcuffed to a desk while being interrogated, that he was threatened with a pistol and physically abused, and that his attorney, in advising him to plead guilty, ignored his alibi defense and represented that his plea would be to a misdemeanor charge rather than to a felony charge. The petition was denied without a hearing and Williams appealed.

The Court of Appeals for the Second Circuit reversed in each case, sitting *en banc* and dividing six to three in Dash's case [7] and disposing of Richardson's and Williams' cases in decisions by three-judge panels.[8] In each case it was directed that a hearing be held on the petition for habeas corpus.[9] It was the Court of Appeals' view that

---

[7] *United States ex rel. Ross* v. *McMann*, 409 F. 2d 1016 (C. A. 2d Cir. 1969). The Court of Appeals' opinion dealt also with the appeal of Wilbert Ross from a denial of habeas corpus without a hearing by the United States District Court for the Eastern District of New York. Ross in his habeas petition alleged that his 1955 plea of guilty to second-degree murder was induced by the State's possession of an unconstitutionally obtained confession. The Court of Appeals held that, like Dash, Ross was entitled to a hearing on his claims. Along with the three respondents dealt with in this opinion, we granted certiorari as to Ross but the matter was subsequently remanded for dismissal as moot after the death of Ross. See n. 1, *supra*.

[8] *United States ex rel. Richardson* v. *McMann*, 408 F. 2d 48 (C. A. 2d Cir. 1969); *United States ex rel. Williams* v. *Follette*, 408 F. 2d 658 (C. A. 2d Cir. 1969).

[9] The same day that the Court of Appeals ordered hearings in the *Dash* and *Richardson* cases, the court, *en banc* and without dissent, held that a hearing was not required in the case of a petitioner for habeas corpus who had pleaded guilty after a trial judge ruled that his confession was admissible in evidence—the Court of Appeals found that the petition for habeas corpus did not allege with sufficient specificity that the plea of guilty was infected by the allegedly coerced confession. *United States ex rel. Rosen* v. *Follette*, 409 F. 2d 1042 (C. A. 2d Cir. 1969).

a plea of guilty is an effective waiver of pretrial irregularities only if the plea is voluntary and that a plea is not voluntary if it is the consequence of an involuntary confession.[10]  That the petitioner was represented by counsel and denied the existence of coercion or promises when tendering his plea does not foreclose a hearing on his petition for habeas corpus alleging matters outside the state court record.  Although conclusory allegations would in no case suffice, the allegations in each of these cases concerning the manner in which the confession was coerced and the connection between the confession and the plea were deemed sufficient to require a hearing.  The law required this much, the Court of Appeals thought, at least in New York, where prior to *Jackson* v. *Denno,* 378 U. S. 368 (1964), constitutionally acceptable procedures were unavailable to a defendant to test the voluntariness of his confession. The Court of Appeals also ordered a hearing in each case for reasons other than that the plea was claimed to rest on a coerced confession which the defendant had no adequate opportunity to test in the state courts.  In the *Dash* case, the additional issue to be considered was whether the trial judge coerced the guilty plea by threats as to the probable sentence after trial and conviction on a plea of not guilty; in *Richardson,* the additional issue was the inadequacy of counsel allegedly arising from the

---

[10] The majority and concurring opinions in the *Dash* case relied on decisions in several other circuits: *United States ex rel. Collins* v. *Maroney,* 382 F. 2d 547 (C. A. 3d Cir. 1967); *Jones* v. *Cunningham,* 297 F. 2d 851 (C. A. 4th Cir. 1962); *Smith* v. *Wainwright,* 373 F. 2d 506 (C. A. 5th Cir. 1967); *Carpenter* v. *Wainwright,* 372 F. 2d 940 (C. A. 5th Cir. 1967); *Bell* v. *Alabama,* 367 F. 2d 243 (C. A. 5th Cir. 1966), cert. denied, 386 U. S. 916 (1967); *Reed* v. *Henderson,* 385 F. 2d 995 (C. A. 6th Cir. 1967); *Smiley* v. *Wilson,* 378 F. 2d 144 (C. A. 9th Cir. 1967); *Doran* v. *Wilson,* 369 F. 2d 505 (C. A. 9th Cir. 1966).

short period of consultation and counsel's advice to the effect that the confession issue could be raised after a plea of guilty; and in *Williams,* the additional question was the alleged failure of counsel to consider Williams' alibi defense and to make it clear that he was pleading to a felony rather than to a misdemeanor.

## II

The core of the Court of Appeals' holding is the proposition that if in a collateral proceeding a guilty plea is shown to have been triggered by a coerced confession—if there would have been no plea had there been no confession—the plea is vulnerable at least in cases coming from New York where the guilty plea was taken prior to *Jackson* v. *Denno, supra.* We are unable to agree with the Court of Appeals on this proposition.

A conviction after a plea of guilty normally rests on the defendant's own admission in open court that he committed the acts with which he is charged. *Brady* v. *United States, ante,* at 748; *McCarthy* v. *United States,* 394 U. S. 459, 466 (1969). That admission may not be compelled, and since the plea is also a waiver of trial—and unless the applicable law otherwise provides,[11] a waiver of the right to contest the admissibility of any evidence the State might have offered against the defendant—it must be an intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady* v. *United States, ante,* at 748.

---

[11] New York law now permits a defendant to challenge the admissibility of a confession in a pretrial hearing and to appeal from an adverse ruling on the admissibility of the confession even if the conviction is based on a plea of guilty. N. Y. Code Crim. Proc. § 813–g (Supp. 1969) (effective July 16, 1965). A similar provision permits a defendant to appeal an adverse ruling on a Fourth Amendment claim after a plea of guilty. N. Y. Code Crim. Proc. § 813–c (Supp. 1969) (effective April 29, 1962).

For present purposes, we put aside those cases where the defendant has his own reasons for pleading guilty wholly aside from the strength of the case against him as well as those cases where the defendant, although he would have gone to trial had he thought the State could not prove its case, is motivated by evidence against him independent of the confession. In these cases, as the Court of Appeals recognized, the confession, even if coerced, is not a sufficient factor in the plea to justify relief. Neither do we have before us the uncounseled defendant, see *Pennsylvania ex rel. Herman* v. *Claudy*, 350 U. S. 116 (1956), nor the situation where the circumstances that coerced the confession have abiding impact and also taint the plea. Cf. *Chambers* v. *Florida*, 309 U. S. 227 (1940). It is not disputed that in such cases a guilty plea is properly open to challenge.[12]

The issue on which we differ with the Court of Appeals arises in those situations involving the counseled defendant who allegedly would put the State to its proof if there was a substantial enough chance of acquittal, who would do so except for a prior confession that might be offered against him, and who because of the confession decides to plead guilty to save himself the expense and agony of a trial and perhaps also to min-

---

[12] *Pennsylvania ex rel. Herman* v. *Claudy*, 350 U. S. 116 (1956), involved a plea of guilty made by a defendant without assistance of counsel. *Herman* did not hold that a plea of guilty, offered by a defendant assisted by competent counsel, is invalid whenever induced by the prosecution's possession of a coerced confession. Likewise, *Chambers* v. *Florida*, 309 U. S. 227 (1940), does not support the position taken by the Court of Appeals in these cases. In *Chambers* the voluntariness of the confessions was properly considered by this Court both because the alleged coercion producing the confessions appeared to carry over to taint the guilty pleas and because the convictions were based on the confessions as well as the guilty pleas. See *Chambers* v. *State*, 136 Fla. 568, 187 So. 156 (1939), rev'd, 309 U. S. 227 (1940).

imize the penalty that might be imposed. After conviction on such a plea, is a defendant entitled to a hearing, and to relief if his factual claims are accepted, when his petition for habeas corpus alleges that his confession was in fact coerced and that it motivated his plea? We think not if he alleges and proves no more than this.

## III

Since we are dealing with a defendant who deems his confession crucial to the State's case against him and who would go to trial if he thought his chances of acquittal were good, his decision to plead guilty or not turns on whether he thinks the law will allow his confession to be used against him. For the defendant who considers his confession involuntary and hence unusable against him at a trial, tendering a plea of guilty would seem a most improbable alternative. The sensible course would be to contest his guilt, prevail on his confession claim at trial, on appeal, or, if necessary, in a collateral proceeding, and win acquittal, however guilty he might be. The books are full of cases in New York and elsewhere, where the defendant has made this choice and has prevailed. If he nevertheless pleads guilty the plea can hardly be blamed on the confession which in his view was inadmissible evidence and no proper part of the State's case. Since by hypothesis the evidence aside from the confession is weak and the defendant has no reasons of his own to plead, a guilty plea in such circumstances is nothing less than a refusal to present his federal claims to the state court in the first instance—a choice by the defendant to take the benefits, if any, of a plea of guilty and then to pursue his coerced-confession claim in collateral proceedings. Surely later allegations that the confession rendered his plea involuntary would appear incredible, and whether his plain bypass

of state remedies was an intelligent act depends on whether he was so incompetently advised by counsel concerning the forum in which he should first present his federal claim that the Constitution will afford him another chance to plead.

A more credible explanation for a plea of guilty by a defendant who would go to trial except for his prior confession is his prediction that the law will permit his admissions to be used against him by the trier of fact. At least the probability of the State's being permitted to use the confession as evidence is sufficient to convince him that the State's case is too strong to contest and that a plea of guilty is the most advantageous course. Nothing in this train of events suggests that the defendant's plea, as distinguished from his confession, is an involuntary act. His later petition for collateral relief asserting that a *coerced* confession induced his plea is at most a claim that the admissibility of his confession was mistakenly assessed and that since he was erroneously advised, either under the then applicable law or under the law later announced, his plea was an unintelligent and voidable act. The Constitution, however, does not render pleas of guilty so vulnerable.

As we said in *Brady* v. *United States, ante,* at 756–757, the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would

the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing. Courts continue to have serious differences among themselves on the admissibility of evidence, both with respect to the proper standard by which the facts are to be judged and with respect to the application of that standard to particular facts. That this Court might hold a defendant's confession inadmissible in evidence, possibly by a divided vote, hardly justifies a conclusion that the defendant's attorney was incompetent or ineffective when he thought the admissibility of the confession sufficiently probable to advise a plea of guilty.

In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession.[13] Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession

---

[13] We do not here consider whether a conviction, based on a plea of guilty entered in a State permitting the defendant pleading guilty to challenge on appeal the admissibility of his confession (as in New York after July 16, 1965, see n. 11, *supra*), would be open to attack in federal habeas corpus proceedings on the grounds that the confession was coerced. Cf. *United States ex rel. Rogers* v. *Warden*, 381 F. 2d 209 (C. A. 2d Cir. 1967).

erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases. On the one hand, uncertainty is inherent in predicting court decisions; but on the other hand defendants facing felony charges are entitled to the effective assistance of competent counsel.[14]  Beyond this we think the matter, for the most part, should be left to the good sense and discretion of the trial courts with the admonition that if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and that judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts.

## IV

We hold, therefore, that a defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without more, entitled to a hearing on his petition for habeas corpus.  Nor do we deem the situation substantially different where the defendant's plea was entered prior to *Jackson* v. *Denno,* 378 U. S. 368 (1964). At issue in that case was the constitutionality of the New York procedure for determining the voluntariness of a confession offered in evidence at a jury trial.  This

---

[14] Since *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), it has been clear that a defendant pleading guilty to a felony charge has a federal right to the assistance of counsel.  See *White* v. *Maryland,* 373 U. S. 59 (1963); *Arsenault* v. *Massachusetts,* 393 U. S. 5 (1968). It has long been recognized that the right to counsel is the right to the effective assistance of counsel.  See *Reece* v. *Georgia,* 350 U. S. 85, 90 (1955); *Glasser* v. *United States,* 315 U. S. 60, 69–70 (1942); *Avery* v. *Alabama,* 308 U. S. 444, 446 (1940); *Powell* v. *Alabama,* 287 U. S. 45, 57 (1932).

procedure, which would have been applicable to the respondents if they had gone to trial, required the trial judge, when the confession was offered and a prima facie case of voluntariness established, to submit the issue to the jury without himself finally resolving disputed issues of fact and determining whether or not the confession was voluntary. The Court held this procedure unconstitutional because it did not "afford a reliable determination of the voluntariness of the confession offered in evidence at the trial, did not adequately protect Jackson's right to be free of a conviction based upon a coerced confession and therefore cannot withstand constitutional attack under the Due Process Clause of the Fourteenth Amendment." 378 U. S., at 377. In reaching that conclusion, the Court overruled *Stein* v. *New York,* 346 U. S. 156 (1953), which had approved the New York practice.

Whether a guilty plea was entered before or after *Jackson* v. *Denno,* the question of the validity of the plea remains the same: was the plea a voluntary and intelligent act of the defendant? As we have previously set out, a plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney. For the respondents successfully to claim relief based on *Jackson* v. *Denno,* each must demonstrate gross error on the part of counsel when he recommended that the defendant plead guilty instead of going to trial and challenging the New York procedures for determining the admissibility of confessions. Such showing cannot be made, for precisely this challenge was presented to the New York courts and to this Court in *Stein* v. *New York, supra,* and in 1953 this Court found no constitutional

infirmity in the New York procedures for dealing with coerced-confession claims. Counsel for these respondents cannot be faulted for not anticipating *Jackson* v. *Denno* or for considering the New York procedures to be as valid as the four dissenters in that case thought them to be.

We are unimpressed with the argument that because the decision in *Jackson* has been applied retroactively to defendants who had previously gone to trial, the defendant whose confession allegedly caused him to plead guilty prior to *Jackson* is also entitled to a hearing on the voluntariness of his confession and to a trial if his admissions are held to have been coerced. A conviction after trial in which a coerced confession is introduced rests in part on the coerced confession, a constitutionally unacceptable basis for conviction. It is that conviction and the confession on which it rests that the defendant later attacks in collateral proceedings. The defendant who pleads guilty is in a different posture. He is convicted on his counseled admission in open court that he committed the crime charged against him. The prior confession is not the basis for the judgment, has never been offered in evidence at a trial, and may never be offered in evidence. Whether or not the advice the defendant received in the pre-*Jackson* era would have been different had *Jackson* then been the law has no bearing on the accuracy of the defendant's admission that he committed the crime.

What is at stake in this phase of the case is not the integrity of the state convictions obtained on guilty pleas, but whether, years later, defendants must be permitted to withdraw their pleas, which were perfectly valid when made, and be given another choice between admitting their guilt and putting the State to its proof. It might be suggested that if *Jackson* had been the law when the pleas in the cases below were made—if the judge

had been required to rule on the voluntariness of challenged confessions at a trial—there would have been a better chance of keeping the confessions from the jury and there would have been no guilty pleas. But because of inherent uncertainty in guilty-plea advice, this is a highly speculative matter in any particular case and not an issue promising a meaningful and productive evidentiary hearing long after entry of the guilty plea. The alternative would be a *per se* constitutional rule invalidating all New York guilty pleas that were motivated by confessions and that were entered prior to *Jackson.* This would be an improvident invasion of the State's interests in maintaining the finality of guilty-plea convictions that were valid under constitutional standards applicable at the time. It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.

## V

As we have previously indicated, in each case below the Court of Appeals ruled that a hearing was required to consider claims other than the claim that the plea of guilty rested on a coerced confession and was entered prior to *Jackson v. Denno, supra.* With respect to these other claims, we now express no disagreement with the judgments of the Court of Appeals; but since our holding will require reassessment of the petitions for habeas

corpus in the light of the standards expressed herein, the judgments of the Court of Appeals are vacated and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACK, while still adhering to his separate opinion in *Jackson* v. *Denno,* 378 U. S. 368, 401–423, concurs in the Court's opinion and judgment in this case.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL join, dissenting.

In this case the Court moves yet another step toward the goal of insulating all guilty pleas from subsequent attack no matter what unconstitutional action of government may have induced a particular plea. Respondents alleged in some detail that they were subjected to physical and mental coercion in order to force them to confess; that they succumbed to these pressures; and that because New York provided no constitutionally acceptable procedures for challenging the validity of their confessions in the trial court they had no reasonable alternative to pleading guilty.[1] Respondents' contention, in short, is that their pleas were the product of the State's illegal action. Notwithstanding the possible truth of the claims, the Court holds that respondents are not even entitled to a hearing which would afford them an opportunity to substantiate their allegations. I

---

[1] There are additional allegations involved in this case, including Richardson's claim that he was ineffectively represented by counsel when he entered his plea and Dash's contention that he was threatened by the trial judge with imposition of the statutory maximum sentence (60 years) if he elected to stand trial and did not prevail. I understand that the Court does not disturb the Court of Appeals' holding that a hearing is required to consider these additional allegations.

cannot agree, for it is clear that the result reached by the Court is inconsistent not only with the prior decisions of this Court but also with the position adopted by virtually every court of appeals that has spoken on this issue.[2]

I

The basic principle applicable to this case was enunciated for the Court by MR. JUSTICE BLACK in *Pennsylvania ex rel. Herman* v. *Claudy,* 350 U. S. 116, 118 (1956): "[A] conviction following trial or on a plea of guilty based on a confession extorted by violence or by mental coercion is invalid under the Federal Due Process Clause." The critical factor in this formulation is that convictions entered on guilty pleas are not valid if they are "based on" coerced confessions. A defendant who seeks to overturn his guilty plea must therefore demonstrate the existence of a sufficient interrelationship or nexus between the plea and the antecedent confession so that the plea may be said to be infected by the State's prior illegal action. Thus to invalidate a guilty plea more must be shown than the mere existence of a coerced

---

[2] The Court does not deny that the decision of the Court of Appeals in the instant case is in complete harmony with the decisions of numerous other courts that have considered the same or similar issues. See, *e. g., Moreno* v. *Beto,* 415 F. 2d 154 (C. A. 5th Cir. 1969); *United States ex rel. McCloud* v. *Rundle,* 402 F. 2d 853 (C. A. 3d Cir. 1968); *Kott* v. *Green,* 387 F. 2d 136 (C. A. 6th Cir. 1967); *Reed* v. *Henderson,* 385 F. 2d 995 (C. A. 6th Cir. 1967); *United States ex rel. Collins* v. *Maroney,* 382 F. 2d 547 (C. A. 3d Cir. 1967); *Smiley* v. *Wilson,* 378 F. 2d 144 (C. A. 9th Cir. 1967); *Carpenter* v. *Wainwright,* 372 F. 2d 940 (C. A. 5th Cir. 1967); *Doran* v. *Wilson,* 369 F. 2d 505 (C. A. 9th Cir. 1966); *White* v. *Pepersack,* 352 F. 2d 470 (C. A. 4th Cir. 1965); *Zachery* v. *Hale,* 286 F. Supp. 237 (D. C. M. D. Ala. 1968); *United States ex rel. Cuevas* v. *Rundle,* 258 F. Supp. 647 (D. C. E. D. Pa. 1966); *People* v. *Spencer,* 66 Cal. 2d 158, 424 P. 2d 715 (1967); *Commonwealth* v. *Baity,* 428 Pa. 306, 237 A. 2d 172 (1968).

confession. The Court of Appeals so held; respondents do not disagree. The critical question, then, is what elements in addition to the coerced confession must be alleged and proved to demonstrate the invalidity of a guilty plea.

The Court abruptly forecloses any inquiry concerning the impact of an allegedly coerced confession by decreeing that the assistance of "reasonably competent" counsel insulates a defendant from the effects of a prior illegal confession. However, as the Court tacitly concedes, the absolute rigor of its new rule must be adjusted to accommodate cases such as *Chambers* v. *Florida,* 309 U. S. 227 (1940). In that case, the four defendants confessed. Subsequently, three of them pleaded guilty, while the fourth pleaded not guilty and was tried before a jury. Each of the defendants, represented by counsel, stated during the trial that he had confessed and was testifying voluntarily.[3] Notwithstanding this testimony in open court, the proffering of guilty pleas, and representation by counsel, the state courts and this Court as well properly permitted a collateral attack upon the judgments of conviction entered on the guilty pleas.

In explication of *Chambers,* the Court notes that the coercive circumstances that compelled the confessions may "have abiding impact and also taint the plea." *Ante,* at 767. Apparently the Court would permit a defendant who was represented by counsel to attack his conviction collaterally if he could demonstrate that coercive pressures were brought to bear upon him at the

---

[3] "[E]ach of the defendants testified on the trial that the confessions were freely and voluntarily made and that the respective statements of each made upon the trial was the free and voluntary statement of such defendant as a witness in his behalf." *Chambers* v. *State,* 113 Fla. 786, 792, 152 So. 437, 438 (1934), on subsequent appeal, 136 Fla. 568, 187 So. 156 (1939), rev'd, 309 U. S. 227 (1940).

very moment he was called to plead. This position is certainly unexceptionable. I cannot agree, however, that the pleading process is constitutionally adequate despite a coerced confession merely because the coercive pressures that compelled the confession ceased prior to the entry of the plea. In short, the "abiding impact" of the coerced confession may continue to prejudice a defendant's case or unfairly influence his decisions regarding his legal alternatives.

Moreover, our approach in *Pennsylvania ex rel. Herman* v. *Claudy,* 350 U. S. 116 (1956), is inconsistent with the absolute rule that the Court adopts today. We there considered whether, under all the circumstances of the case, the pressures brought to bear on the defendant by the State, including the extraction of a coerced confession, were sufficient to render his guilty plea involuntary. While the fact that the defendant was not assisted by counsel was given considerable weight in determining involuntariness, it was hardly the sole critical consideration. Thus the Court's attempt to distinguish *Claudy* on the basis of counsel's assistance alone is unpersuasive. I would continue to adhere to the approach adopted in *Chambers* and *Claudy* and take into account all of the circumstances surrounding the entry of a plea rather than attach talismanic significance to the presence of counsel.

I concluded in *Parker* v. *North Carolina* and *Brady* v. *United States, post,* at 802, that "the legal concept of 'involuntariness' has not been narrowly confined but refers to a surrender of constitutional rights influenced by considerations that the government cannot properly introduce" into the pleading process. In *Parker* and *Brady* the "impermissible factor" introduced by the government was an unconstitutional death penalty scheme; here the improper influence is a coerced confession. In either event the defendant must establish that the unconstitutional influence actually infected the

pleading process, that it was a significant factor in his decision to plead guilty. But if he does so, then he is entitled to reversal of the judgment of conviction entered on the plea.

*Harrison* v. *United States,* 392 U. S. 219 (1968), lends additional support to this conclusion. There confessions had been illegally procured from a defendant and then introduced at his trial. At a new trial, after reversal of the defendant's conviction, he objected to the introduction of his testimony from the previous trial on the ground that he had been improperly induced to testify at the former trial by the introduction of the inadmissible confessions. We sustained this contention, noting in part that

> "the petitioner testified only after the Government had illegally introduced into evidence three confessions, all wrongfully obtained, and the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby—the fruit of the poisonous tree, to invoke a time-worn metaphor. For the 'essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.' *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 392.
>
> ". . . The question is not *whether* the petitioner made a knowing decision to testify, but *why*. If he did so in order to overcome the impact of confessions illegally obtained and hence improperly introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible." 392 U. S., at 222–223. (Emphasis in original.)

The same reasoning is applicable here. That is, if the coerced confession induces a guilty plea, that plea, no

less than the surrender of the self-incrimination priv-
ilege in *Harrison,* is the fruit of the State's prior illegal
conduct, and thus is vulnerable to attack.[4]

---

[4] Indeed, one of the dissenting opinions in *Harrison* concludes
that "[s]imilarly, an inadmissible confession preceding a plea of
guilty would taint the plea." 392 U. S., at 234 (WHITE, J.,
dissenting). In response to this suggestion, the Court noted that
"we decide here only a case in which the prosecution illegally
introduced the defendant's confession in evidence against him at
trial in its case-in-chief." 392 U. S., at 223 n. 9. Of course, in
*Harrison* we did consider a case in which evidence had been intro-
duced at trial. It hardly follows, however, that the fruit-of-the-
poisonous-tree rationale has no application apart from the narrow
confines of the *Harrison* factual context. See generally *Fahy* v.
*Connecticut,* 375 U. S. 85 (1963); *Wong Sun* v. *United States,* 371
U. S. 471 (1963); *Nardone* v. *United States,* 308 U. S. 338 (1939).

There are factual differences between *Harrison* and the instant
case, but they are insufficient to undermine the analogy. For
example, in *Harrison* the inadmissible confessions had actually
been used in proceedings against the defendant, whereas here no
more is involved than the potential use of the coerced confessions.
However, confessions have traditionally been considered extremely
valuable evidentiary material, and, in the ordinary course of
events, it is not to be expected that the prosecution would, on its
own initiative, refrain from attempting to introduce a relevant
confession. Of course, when a guilty plea is attacked on the ground
that it was induced by an involuntary confession, it is always open
to the prosecution to establish that there was no confession, that
any confession was not coerced, or that the prosecution had decided
not to use the confession against the defendant and had communi-
cated this fact to him.

Moreover, it is perhaps not as clear in the instant case as it was
in *Harrison* that the prosecution's illegality infected the subse-
quent proceedings involving the respective defendants. In *Har-
rison,* the defense attorney had initially announced that the
defendant would not testify, and the defendant did in fact take
the stand only after the prosecution had introduced his confes-
sions. In that circumstance the burden was appropriately placed
upon the prosecution to rebut the clear inference that the inadmis-
sible confessions induced the subsequent testimony. By contrast, in
the instant case we are dealing with guilty pleas that are usually
the culmination of a decision-making process in which the defendant

As in *Parker* and *Brady* the Court lays great stress upon the ability of counsel to offset the improper influence injected into the pleading process by the State's unconstitutional action. However, here again, the conclusions that the Court draws from the role it assigns to counsel are, in my view, entirely incorrect, for it cannot be blandly assumed, without further discussion, that counsel will be able to render effective assistance to the defendant in freeing him from the burdens of his unconstitutionally extorted confession.

In *Parker* and *Brady* there was no action that counsel could take to remove the threat posed by the unconstitutional death penalty scheme. There was no way, in short, to counteract the intrusion of an impermissible factor into the pleading process.

However, where the unconstitutional factor is a coerced confession, it is not necessarily true that counsel's role is so limited. It is a common practice, for example, to hold pretrial hearings or devise other procedures for the purpose of permitting defendants an opportunity to challenge the admissibility of allegedly coerced confessions. If it is assumed that these procedures provide a constitutionally adequate means to attack the validity of the confession, then it must be expected that a defendant who subsequently seeks to overturn his guilty plea will come forward with a persuasive explanation for his failure to invoke those procedures which were readily available to test the validity of his confession.

It does not follow from this that a defendant assisted by counsel can never demonstrate that this failure to

---

has taken into account numerous factors. It can therefore hardly be established on the basis of mere allegations that, in a given case, a coerced confession induced the guilty plea. This factual difference indicates no more, however, than that the respondents here may have a more difficult time than the petitioner in *Harrison* in substantiating their respective claims.

invoke the appropriate procedures was justified. The entry of a guilty plea is, essentially, a waiver, or the "intentional relinquishment or abandonment of a known right," *Johnson* v. *Zerbst,* 304 U. S. 458, 464 (1938). By pleading guilty the defendant gives up not only his right to a jury trial, *Boykin* v. *Alabama,* 395 U. S. 238 (1969), but also, in most jurisdictions, the opportunity to challenge the validity of his confession by whatever procedures are provided for that purpose. It is always open to a defendant to establish that his guilty plea was not a constitutionally valid waiver, that he did not deliberately bypass the orderly processes provided to determine the validity of confessions. Cf. *Fay* v. *Noia,* 372 U. S. 391, 438–440 (1963). Whether or not there has been a deliberate bypass can be determined, of course, only by a consideration of the total circumstances surrounding the entry of each plea.[5]

## II

In the foregoing discussion I have assumed that the State has provided a constitutionally adequate method to challenge an allegedly invalid confession in the trial court. That assumption is not applicable to respondents in this case, however, because, as we held in *Jackson* v. *Denno,* 378 U. S. 368 (1964), the procedure that New York employed at the time their pleas were tendered failed to provide a constitutionally acceptable means to challenge the validity of confessions. Thus, even the

---

[5] If the procedures for challenging the validity of confessions are constitutionally adequate, then a persuasive justification for the failure to ·invoke them does not arise from the fear that a confession, erroneously or otherwise, will be determined to be voluntary. If this were not true, then no guilty plea could constitute an effective waiver, for the risk of error or adverse result is inherent in every criminal proceeding, and it would be open to every defendant to contend that this risk induced his guilty plea.

most expert appraisal and advice by counsel necessarily had to take into account a procedure for challenging the validity of confessions that was fundamentally defective, but that had nevertheless been approved by this Court in *Stein* v. *New York,* 346 U. S. 156 (1953). Hence the advice of counsel could not remedy or offset the constitutional defect infused into the pleading process. Therefore, respondents are entitled to relief if they can establish that confessions were coerced from them and that their guilty pleas were motivated in significant part by their inability to challenge the validity of the confessions in a constitutionally adequate procedure.[6] By such a showing they would establish a nexus between the coerced confessions and the subsequent pleas and thereby demonstrate that their respective pleas were the product of the State's illegal action.

The Court seeks to avoid the impact of *Jackson* v. *Denno* upon pre-*Jackson* guilty pleas by adding a new and totally unjustified element to the Court's confused pattern of retroactivity rules. *Jackson* v. *Denno* has been held to be retroactive, at least in the sense that it requires hearings to determine the voluntariness of pre-*Jackson* confessions that were introduced at trial.[7] The

---

[6] The Court of Appeals held that a plea of guilty was not voluntary "if the plea was substantially motivated by a coerced confession the validity of which [the defendant] was unable, for all practical purposes, to contest." 409 F. 2d, at 1023. I would accept this formulation with the understanding that a "substantial" motivating factor is any one which is not merely *de minimis.* Ordinarily, a decision to plead guilty is the result of numerous considerations. As long as a defendant was in fact motivated in significant part by the influence of an unconstitutionally obtained confession that he had no adequate means to challenge, I would relieve him of the consequences of his guilty plea.

[7] See, *e. g., Johnson* v. *New Jersey,* 384 U. S. 719, 727–728 (1966); *Tehan* v. *Shott,* 382 U. S. 406, 416 (1966); *Linkletter* v. *Walker,* 381 U. S. 618, 639 and n. 20 (1965).

Court today decides, however, that *Jackson*'s effect is to be limited to situations in which the confession was introduced at trial and is to have no application whatever to guilty pleas. In short, *Jackson* v. *Denno* is now held to be only partially retroactive, a wholly novel and unacceptable result.

As I understand the Court's opinion, there are basically three reasons why the Court rejects the contention that the *Jackson-Denno* defect may unconstitutionally infect the pleading process. The first is the highly formalistic notion that the guilty plea, and not the antecedent confession, is the basis of the judgments against respondents. Of course this is true in the technical sense that the guilty plea is *always* the legal basis of a judgment of conviction entered thereon. However, this argument hardly disposes adequately of the contention that the plea in turn was at least partially induced, and therefore is tainted, by the fact that no constitutionally adequate procedures existed to test the validity of a highly prejudicial and allegedly coerced confession.

The Court's formalism is symptomatic of the desire to ignore entirely the motivational aspect of a decision to plead guilty. As long as counsel is present when the defendant pleads, the Court is apparently willing to assume that the government may inject virtually any influence into the process of deciding on a plea. However, as I demonstrated in *Parker* and *Brady,* this insistence upon ignoring the factors with which the prosecution confronts the defendant before he pleads departs broadly from the manner in which the voluntariness of guilty pleas has traditionally been approached. In short, the critical question is not, as the Court insists, whether respondents knowingly decided to plead guilty but *why* they made that decision. Cf. *Harrison* v. *United States,* 392 U. S. 219, 223 (1968).

Secondly, the Court views the entry of the guilty pleas as waivers of objections to the allegedly coerced confessions. For the reasons previously stated, I do not believe that the pleas were legally voluntary if respondents' allegations are proved. Nor were the pleas the relinquishment of a *known* right, for it was only when *Stein* v. *New York,* 346 U. S. 156 (1953), was overruled by *Jackson* v. *Denno* that it became clear that the New York procedure was constitutionally inadequate. Thus there is no sense in which respondents deliberately bypassed or "waived" state procedures constitutionally adequate to adjudicate their coerced-confession claims. See *Moreno* v. *Beto,* 415 F. 2d 154 (C. A. 5th Cir. 1969); cf. *Smith* v. *Yeager,* 393 U. S. 122 (1968).

Finally, the Court takes the position, in effect, that the defect in the *Stein*-approved New York procedure was not very great—that the procedure was only a little bit unconstitutional—and hence that it is too speculative to inquire whether the difference between the pre-*Jackson* and post-*Jackson* procedures would, in a particular case, alter the advice given by counsel concerning the desirability of a plea. If, indeed, the deficiency in the pre-*Jackson* procedure was not very great, then it is difficult to understand why we found it necessary to invalidate the procedure and, particularly, why it was imperative to apply the *Jackson* decision retroactively. I, for one, have never thought *Jackson* v. *Denno* is so trivial, that it deals with procedural distinctions of such insignificance that they would necessarily make no difference in the plea advice given to a defendant by his attorney. To the contrary, the extent to which the constitutional defect in the pre-*Jackson-Denno* procedure actually infected the pleading process cannot be determined by *a priori* pronouncements by this Court; rather, its effect can be evaluated only after a factual inquiry into the circumstances motivating particular pleas.

Despite the disclaimers to the contrary, what is essentially involved both in the instant case and in *Brady* and *Parker* is nothing less than the determination of the Court to preserve the sanctity of virtually all judgments obtained by means of guilty pleas. There is no other adequate explanation for the surprising notion of partial retroactivity that the Court today propounds. An approach that shrinks from giving effect to the clear implications of our prior decisions by drawing untenable distinctions may have its appeal, but it hardly furthers the goal of principled decisionmaking. Thus, I am constrained to agree with the concurring judge in the Court of Appeals that it is

> "the rankest unfairness, and indeed a denigration of the rule of law, to recognize the infirmity of the pre-Jackson v. Denno procedure for challenging the legality of a confession in the case of prisoners who went to trial but to deny access to the judicial process to those who improperly pleaded guilty merely because the state would have more difficulty in affording a new trial to them." 409 F. 2d, at 1027.

Lest it be thought that my views would render the criminal process "less effective in protecting society against those who have made it impossible to live today in safety," *Harrison* v. *United States,* 392 U. S. 219, 235 (WHITE, J., dissenting), I emphasize again that the *only* issue involved in this case is whether respondents are entitled to a *hearing* on their claims that coerced confessions and a procedural device that we condemned as unconstitutional deterred them from exercising their constitutional rights. Whether or not these allegations have bases in fact is not before us, for these individuals have never been afforded a judicial forum for the presentation of their claims. In these circumstances, I would not simply slam shut the door of the courthouse in their faces.

## III

I agree with the Court of Appeals that a hearing is required for the coerced-confession claims presented in these cases. We have, of course, held that a post-conviction hearing must be afforded to defendants whose allegations of constitutional deprivation raise factual issues and are neither "vague, conclusory, or palpably incredible," *Machibroda* v. *United States,* 368 U. S. 487, 495 (1962), nor "patently frivolous or false," *Pennsylvania ex rel. Herman* v. *Claudy,* 350 U. S. 116, 119 (1956).[8] Respondents have raised at least three factual issues that the record in its present form does not resolve: (1) whether confessions were obtained from them; (2) whether these confessions, if given, were coerced; and (3) whether respondents had a justifiable reason for their failure to challenge the validity of the confessions—more specifically, whether the confessions, together with the *Jackson-Denno* defect in New York's procedures, influenced in significant part the decisions to plead guilty. As to each of these issues, respondents of course bear the burden of proof.

Respondents alleged in some detail that they had been coerced by the police into confessing. They also alleged that the *Jackson-Denno* defect in the state procedures rendered futile any attempt to challenge the confessions in the state trial court.[9] The Court of Appeals noted

---

[8] Respondents have never had a hearing in the state courts on their coerced-confession claims because the state courts rejected their contentions on the pleadings. In these circumstances, the Court of Appeals properly instructed the District Court to afford the State a reasonable time to proceed with its own hearings, if it be so advised.

[9] For example, respondent Dash stated the following in his petition to the District Court:

"The futility of relator's position is more clearly seen when this Court considers the fact, that the only choice remaining to him—beside the entry of the plea of guilty to a crime that he had not

that, in the ordinary case, additional supporting material, such as an affidavit from the attorney who represented the petitioner, should be appended to his habeas corpus petition. Without elaboration, however, the Court of Appeals concluded that no material in corroboration was necessary in this case.

To be sure, it is difficult, though not impossible, to believe that without any corroborative evidence a petitioner would ultimately succeed with a sophisticated argument such as the contention that a coerced confession, coupled with the *Jackson-Denno* defect, induced his guilty plea. In this connection, the views of the defense attorney when the plea was entered are particularly important because in the ordinary case counsel is in a good position to appraise the factors that actually entered into the decision to plead guilty. As a technical matter of pleading, however, I would not absolutely require that a petitioner, particularly one who is proceeding *pro se,* accompany his petition with extensive supporting materials.[10] It is of course prudent for petitioners who raise a claim such as the one presented in the instant case to append a statement from counsel, or at least an explanation of why such a statement was not procured, for the petitioner who does not do so

committed—was to proceed to trial in the hope of challenging the admissibility of the alleged coerced confession. For it was only in the case of *Jackson* v. *Denno* . . . that the Court recognized the insoluble plight of a defendant in New York, faced with the decision whether to challenge the admissibility of a confession, had in violation of the United States Constitution. Relator had no such remedy when he was faced with this situation."

Respondent Williams' petition contains similar references to *Jackson* v. *Denno.* Respondent Richardson's principal claim relates to the adequacy of the legal assistance afforded him. He concedes that the pre-*Jackson-Denno* procedure played no role in his decision to plead guilty.

[10] See, *e. g., Price* v. *Johnston,* 334 U. S. 266, 292 (1948).

takes a considerable risk that his petition will be denied as vague, conclusory, or frivolous.[11]

The respondents in this case clearly raised the *Jackson-Denno* issue in their petitions to the District Court. Furthermore, this Court has not affected the judgment below insofar as it requires hearings for these respondents on issues other than their coerced-confession claims. In these circumstances, I would not disturb that portion of the Court of Appeals' order that requires the District Court to consider the merits of respondents' coerced-confession allegations.

Accordingly, I would affirm the judgment of the Court of Appeals.

---

[11] See, *e. g.*, *United States ex rel. Nixon* v. *Follette*, 299 F. Supp. 253 (D. C. S. D. N. Y. 1969).