## (April 14, 1981)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERNEST LONG, Appellant. — Judgment, Supreme Court, Bronx County, rendered June 5, 1979, convicting defendant of robbery in the first degree and sentencing him to an indeterminate term of from 10 to 20 years, unanimously reversed, on the law, and the matter remanded for a new trial. According to the People's proof, the robbery of which defendant was convicted took place on Saturday, July 22, 1978 at 1:40 A.M. Before trial, in response to previous counsel's demand for a bill of particulars, the prosecutor had given the time and date of the incident as 1:30 A.M. on July 22, 1978. On defendant's case Charles Ridgley, a friend of defendant for almost three years, was called to testify to an alibi. After a few preliminary questions, defendant's attorney asked "I direct your attention to July 22, 1978 in the evening of that day, did you see [defendant]." Ridgley proceeded to place defendant with him and their wives sitting on the stoop until from about 10:45 P.M. to "One o'clock. Something like that. About two hours." At that time, according to Ridgley, defendant and his wife went upstairs to their apartment. When asked by the court if he wished to cross-examine, the prosecutor stated that he did not have any questions. Defendant's attorney immediately thereafter called Valerie Long, defendant's "common-law" wife of nine years. After establishing the duration of the relationship and number of children born to the couple, defendant's attorney asked "Now, Ms. Long, I direct your attention to July 22, 1978, do you recall that date?" The witness proceeded to substantiate Ridgley's account of the evening, except to state that she and defendant went upstairs to their apartment about midnight. After watching television she and defendant retired for the night at about 1:00 A.M. On cross-examination, Ms. Long testified that on July 21, 1978, defendant "was home until about eleven, then he went *** on the east side. You know where his friends are at." Later, she was forced to admit that her account of events dealt with Saturday evening, while the crime was committed at 1:40 A.M. Saturday, or as the prosecutor expressed it "kind of like Friday night ma'am." Defendant testified in his own behalf and stated that at 1:40 A.M. on July 22, 1978 he was home with his wife. The Constitution affords the accused the right to effective assistance of counsel. (McMann v Richardson, 397 US 759.) The

questions of defendant's attorney were keyed to the evening of July 22, thus prompting the alibi witnesses to testify to defendant's whereabouts 24 hours after the crime. Inasmuch as these questions went to the heart of the alibi this error undermined the defense. Notwithstanding counsel's competence in other phases of the proceedings, the representation provided was not " 'adequate or effective in any meaningful sense of the words.' " *(People v Aiken,* 45 NY2d 394, 398.) Although in the typical case an attack on the effectiveness of counsel is more appropriately reviewable on the basis of a postconviction application under CPL 440.10, this record is adequate for appellate disposition of the claim. (See *People v Brown,* 45 NY2d 852.) We note that in summation the prosecutor exceeded the bounds of propriety in making himself an unsworn witness and disparaging defense counsel. Under the circumstances, however, these excesses, while not to be condoned, were not so pervasive as to deprive defendant of a fair trial. Concur — Murphy, P. J., Sandler and Sullivan, JJ.; Markewich and Fein, JJ., concur in separate memoranda as follows.

Markewich, J. (concurring in the result). While I concur in the direction for a new trial, I cannot join my colleagues in their characterization of defense counsel as incompetent. Defendant was undoubtedly the difficult sort of client who takes control of the litigation where, as here, he is paying for representation. The record shows that he took the witness stand in direct contravention of his counsel's advice that he not testify. It would also appear that, as part of counsel's problem, he did not check too well his client's statement about his claimed alibi. After all, defendant's own "wife" testified at first to the incorrect date, easily confused because, even though the attempted alibi actually addressed itself to a *time* after the charged crime, the elicited evidence addressed itself to the same *numbered* day as that on which the crime had occurred; her evidence was corrected on cross-examination. Counsel did commit an error, but this one slip does not justify a charge of incompetence, nor do we actually know how it came about. Defendant is, however, entitled to a new trial on the score of pervasive prosecutorial misconduct. The District Attorney's summation was concentrated to a great extent in personal attacks on defense counsel, accusing him directly and by innuendo of using smoke screens, and attempts to conceal evidence from the jury. One such attack charged counsel with dishonest, limited cross-examination, designed to keep the prosecutor from eliciting prior consistent statements, from "the officer [who] had information," thus bolstering that witness' testimony. He accused his adversary, without justification in the record, of having collaborated with the defendant himself in an unsuccessful endeavor to avoid the court's direction to defendant to display the tattoos on his arm to the jury.[*] And beyond both of these attacks, and not content with the debacle of the aborted alibi defense which provides the basis for my colleagues' conclusion of incompetence of counsel, he charged his adversary with a deliberate attempt at deception in its presentation and with taking "a calculated risk that the time would go unnoticed." No lawyer, let alone one with quasi-judicial obligations, should descend to such tactics, and it cannot be said that they contributed to a fair trial.

Fein, J. (concurring in result). I agree with the majority that defendant was denied an adequate defense because of the failure of counsel to recognize that an alibi for the night of July 22, 1978 was of no use as a defense to the commission of a crime alleged to have been committed in the early

---

[*] The tattoos had been part of the description of his assailant given by the complainant.

morning of the same day, July 22, 1978. I concur with Justice Markewich that the District Attorney's summation and personal attack on defense counsel had the effect of denying the defendant a fair trial. Although either ground might be sufficient for reversal, the concurrence of both plainly demonstrates that a new trial is required.