**Emilio REYES, Petitioner,**

v.

**J. D. COX, Superintendent Virginia State Penitentiary, Respondent.**

Civ. A. No. 71–C–56–D.

United States District Court,
W. D. Virginia,
Danville Division.

Dec. 15, 1971.

Robert E. Shepherd, Jr., Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, District Judge.

This case comes before the court upon a petition for a writ of habeas corpus filed by Emilio Reyes, a state prisoner, pursuant to 28 U.S.C. § 2241. The petition was originally filed in the United States District Court for the Eastern District of Virginia and was later transferred to this court by order dated September 24, 1971. Leave to proceed *in forma pauperis* has been previously granted.

Petitioner is currently serving sentences totalling 26 years in the Virginia State Penitentiary pursuant to judgments of several state courts arising from convictions for armed robbery, statutory burglary, and grand larceny. Petitioner does not here attack all of these convictions; rather he challenges that part of his detention arising from judgments of the Corporation Court of the City of Martinsville in two cases, tried together on January 11, 1968, upon convictions of statutory burglary and grand and petit larceny. At his trial, Reyes, represented by counsel, entered a plea of guilty and was tried by the court without a jury. The convictions and sentences were not appealed.

Although the allegations in the petition are rather vague and conclusory, it

appears that several constitutional errors are alleged, namely: (1) involuntary plea of guilty; (2) ineffective assistance of counsel; (3) lack of probable cause for arrest; (4) failure of the police to inform petitioner of his constitutional rights, from which an illegal confession was obtained; (5) failure of the court to provide an interpreter. Prior to the initiation of this proceeding, petitioner had substantially presented these claims in collateral habeas corpus proceedings in the trial court and on appeal to the Virginia Supreme Court of Appeals, both of which denied and dismissed the petition without relief. Having so presented his claims, he has exhausted his available state remedies. 28 U.S.C. § 2254; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

■ All facts necessary for the court to rule in this case appear in the record; therefore, it is not necessary to hold a plenary hearing to develop additional facts. Grundler v. North Carolina, 283 F.2d 798 (4th Cir. 1960).

■ Petitioner's allegation of an involuntary plea of guilty rests upon two grounds: first, he did not understand the consequences of the plea because he cannot easily comprehend English; second, he entered the plea in fear that his conviction would otherwise be secured by the use of an illegally obtained confession. The trial court made a searching inquiry to ascertain whether Reyes did in fact understand his rights and the nature of his plea. The court first determined that petitioner could not read English well and that he understood spoken English "some but not very good." In answer to the court's questioning, petitioner then stated: that he understood the charges and had conferred with counsel about them; that he knew he had a right to plead not guilty and to be tried by a jury; that he knew a plea of guilty was an admission that he committed the acts charged and all that would remain was the imposition of sentence, the maximum of which reached twenty years on each felony charge; that the plea was not coerced or otherwise induced by counsel or anyone else; that he was satisfied with counsel's representation; and that he had no complaint against the law enforcement officials regarding their conduct toward him. Aware that petitioner did not fully comprehend English, the trial court frequently repeated or rephrased the questions to ensure his understanding. The judgment order of the court states that the plea of guilty was entered knowingly and voluntarily with the advice of counsel and that the court opined that petitioner understood the nature and consequences of his plea. Although petitioner's mastery of his native Spanish is superior to that of English, this court feels that Reyes did in fact knowingly enter his plea. It is noted that prior to the trial, petitioner had lived and worked in this country for several years in surroundings conducive to the acquisition of at least a basic speaking knowledge of English. The court is further aware that petitioner was no stranger to the judicial process in general and to the Martinsville Court in particular, since he had been tried there a month earlier for armed robbery. Moreover, at no time during the trial did petitioner request an interpreter. The record amply demonstrates that the trial court's rephrasing of its questions and petitioner's corresponding unequivocal responses, overcame any language difficulty petitioner may have had. Under these circumstances, the court can find no merit in the claim.

■ The petitioner's claim that the plea of guilty was induced by the threatened use of an illegally obtained confession is also without merit. The court is not unfamiliar with petitioner, having considered a previous federal habeas corpus petition in which he attacked his detention arising from the armed robbery conviction, noted above, imposed on December 13, 1967. Reyes v. Slayton, 331 F.Supp. 325 (W.D.Va.1971) (Reyes withdrew that petition the day before the order dismissing the petition was entered). Specifically, that conviction was closely related with the convictions

attacked here, since the incidents from which all the convictions arose spanned no more than a two-day period. Petitioner was lawfully arrested around midnight, October 19, 1967, while fleeing from the scene of the robbery committed minutes before in Martinsville. Following the arrest, the pursuing officers advised petitioner of his constitutional rights, whereupon he was subsequently returned to the police station in Martinsville. Found upon petitioner's person and in his automobile was evidence indicating that petitioner not only committed the robbery but also the burglaries from which arose the convictions challenged here. The officers investigating the latter cases advised petitioner of his constitutional rights at the police station several hours after he had been brought in for the robbery. Reyes thereafter admitted that he committed one of the burglaries but not the other. Thus petitioner was not "kidnapped" and returned by the police before he was interrogated about the burglaries since he had already been lawfully arrested and detained for another crime. Only the fact that he was arrested and questioned in the early hours of the morning was there in any apparent sense a "night-long" interrogation. In any case, a plea of guilty is not rendered involuntary merely because of the uncertainty or fear of the trial admission of a prior confession which may possibly have been obtained illegally, particularly if there is evidence independent of the alleged illegal confession to support the conviction. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

■■ Other than the attack upon his guilty plea, petitioner's major claim is that he was deprived of the effective assistance of counsel because counsel failed to ask the court to provide an interpreter and because he conducted no defense. It has already been established that petitioner understood the proceedings and the questions propounded to him by the court, at least to the extent that an interpreter was unnecessary.

Nor did petitioner request that an interpreter be provided by the court during the trial. Finally petitioner does not suggest nor is there any evidence that he had a colorable defense to present. In answer to petitioner's remaining claims challenging the legality of his arrest and interrogation, it has been determined that, from evidence obtained during his arrest for armed robbery, there was probable cause to detain him at the police station for the burglaries. Petitioner was advised of his rights at least twice, upon arrest and prior to interrogation about the burglaries; indeed, an investigating officer testified that he repeated some of the constitutional warnings to ensure petitioner's understanding of them. Thus, any statement he may have made occurred after he had been advised of his right to remain silent and to have an attorney present. Also the petitioner stated at trial that he had no complaints against the law enforcement officers connected with the case. The court does not feel that counsel's representation was ineffective, nor that the evidence obtained by the prosecuting authorities was done so illegally.

■ Petitioner has finally leveled broadside accusations, not previously considered here, against the state proceedings in general, to wit: that he has been threatened with deportation to his native Cuba, that his counsel collaborated with the prosecution in securing his conviction, and that the officers of the court have deliberately impeded a speedy determination of his claims in both direct and collateral proceedings. Having failed to present these claims to any court in any prior proceedings, petitioner has failed to exhaust his available state remedies. 28 U.S.C. § 2254. More important, the allegations are mere conclusions, unsupported by any factual basis, and the court cannot and will not consider them.

For the foregoing reasons, it is ordered that the petition for a writ of habeas corpus be dismissed and the relief denied.

If the petitioner wishes to appeal this judgment or any part thereof, he should file with the clerk of *this* court within 30 days a notice of appeal. Failure to file notice of appeal within 30 days may result in a denial of the right of appeal. The notice of appeal shall state the following:

1. the judgment, order or part thereof appealed from;

2. the party or parties taking the appeal; and

3. the court (United States Court of Appeals for the Fourth Circuit) to which the appeal is taken.