**UNITED STATES of America**

v.

**James Allan HOUGHTON.**

**No. CR. 4–936.**

United States District Court, Northern District of Texas, Fort Worth Division.

Jan. 27, 1975.

As amended March 21, 1975.

Alex McGlinchey, Fort Worth, Tex., for the Government.

James Allen Houghton, pro se.

## OPINION

BREWSTER, District Judge.

Over two years after his conviction and sentence in this case, Houghton has filed a motion that he be furnished with a transcript of the proceedings herein without cost to him. The Court is of the opinion that the motion should be denied.

The conviction was on a plea of guilty to Count 1 of a two count indictment charging Houghton with wiretapping a telephone in violation of 18 U.S.C. § 2511. Penalty was assessed at 5 years imprisonment, to begin on the date he was sentenced.[1]

Following two abortive attempts to get the case to trial after Houghton pleaded not guilty at his arraignment, a

---

I. The importance of this provision was that this sentence did not add any time to that Houghton was already bound to serve under three cumulative five year sentences in this District.

trial before a jury on the two counts began on Thursday, March 9, 1972. Evidence was taken for three days. Both sides rested at about 4:30 P.M. on Monday, and the lawyers then met with the Judge in chambers to discuss the charge to the jury. During the course of that discussion, a deputy marshal reported that Houghton wanted to see his attorney. When the lawyer returned from his meeting with Houghton, he reported that Houghton wanted to change his plea to guilty. The Court thought it would be better to submit the case to the jury,[2] but directed defense counsel to tell his client to think the matter over that night and inform the Court of his decision the next morning. On Tuesday morning, Houghton insisted that he wanted to change his plea to guilty; and in view of the fact that Houghton was already under sentences totalling fifteen years on five counts in three separate federal cases, the Assistant United States Attorney said that the government would dismiss Count 2 if Houghton were convicted on a plea of guilty to Count 1. The plea was accepted and the case was disposed of on that basis.

By reason of the fact that this sentence began to run during the early part of the first of the three consecutive five year sentences Houghton was already serving, he made no complaint and did not appeal. No proceeding of any kind has ever been filed attacking the validity of his conviction and sentence in this case. In spite of that, Houghton now wants the Court to order that he be furnished with a complete transcript of the proceedings in this case at the expense of something like $750.00 to the taxpayers.

■ The motion should be denied under the rule announced in the following cases. Harless v. United States, 5 Cir.,

329 F.2d 397 (1964); Walker v. United States, 5 Cir., 424 F.2d 278 (1970); Skinner v. United States, 5 Cir., 434 F. 2d 1036 (1970); Bennett v. United States, 5 Cir., 437 F.2d 1210 (1971); Archer v. United States, 5 Cir., 457 F.2d 948 (1972); Prince v. United States, 10 Cir., 312 F.2d 252 (1962); Ketcherside v. United States, 6 Cir., 317 F.2d 807 (1962); McGarry v. Fogliani, 9 Cir., 370 F.2d 42 (1967). The following quotations are from these cases.

" . . . The statutory right to proceed in forma pauperis does not include the right to obtain copies of court orders, indictments, and transcript of record, without payment therefor, for use in proposed or prospective litigation. . . ." Harless, 239 F.2d at pp. 398–399.

" . . . A federal prisoner is not entitled to obtain copies of court records at Government expense for the purpose of searching the record for possible error. . . ." Walker, 424 F.2d at p. 279.

" . . . Nor is the court required to order a copy of appellant's transcript merely to enable appellant to 'comb the record in the hope of discovering some flaw.' " McGarry, 370 F.2d at 44.

It would be difficult to find a better case than this one to show the good reason for this rule.

■ Houghton came from a good family. He had a good appearance and was well above average intelligence and ability. He got his degree from Hardin-Simmons University, at Abilene, Texas, in 1953, with a major in Bible and a minor in Business Administration. He then studied at Southwestern Baptist Theological Seminary in Fort Worth for two years.[3] He then became a Baptist preacher and had several pulpits in West

---

2. Houghton had already been tried before a jury in this Court on a charge of jumping his bond herein; and from the sentence proceedings in that case the Court knew that Houghton had entered a plea of guilty in one of his two Dallas cases and appealed from the conviction thereon the next day after judgment was entered.

3. Hardin-Simmons University, Southwestern Theological Seminary and Baylor University are the three leading Baptist universities in Texas. They are considered to be outstanding in training persons for the ministry.

Texas. He soon acquired two vices which a Baptist preacher is not supposed to have, and the bottle and the skirt quickly got him.

Though it is common knowledge, Houghton apparently did not realize that it is almost impossible for a man of ordinary means to support two major vices at the same time; but he soon found out firsthand that he could not maintain them on the salary of a Baptist preacher in a medium size West Texas town. He turned to burglary and theft for additional income. He made a number of separate trips to the state penitentiary to serve his many sentences. On one of those occasions, he went to prison to serve sentences on eighteen burglary convictions.

After more than thirty state convictions for burglary and felony theft, he apparently decided that there ought to be some form of crime more profitable and sophisticated than breaking into business establishments [4] and private residences, so he turned to blackmail. His *modus operandi* at first was to have a good looking girl friend set up business and professional men in embarrassing circumstances so he could get some kind of convincing evidence to use to blackmail them. The woman would make contact with the prospective victim for a pretended legitimate purpose, and entice him to go to bed with her, if she could. Houghton's plan was either to go to their room unannounced and get a picture of them in the act, or to have the woman call the man back and talk to him in graphic detail about how much she enjoyed being in bed with him, while Houghton was making a recording through the help of a tap on the telephone. He would then go to the victim and "sell" him the picture or the tape recording.

As usually happens, Houghton pushed his blackmail too far in some instances, and some of his victims reported him. An indictment containing three counts charging him with unlawfully wiretapping telephones was returned into federal court in Dallas, and one with two counts, into the federal court in Fort Worth. He was convicted by a jury on all three counts in the Dallas case. The offenses alleged in the Fort Worth case were committed while he was free on bond on appeal from his conviction in Dallas. He jumped his appeal bond when the Dallas case was affirmed, and also jumped his bail bond in the Fort Worth case. The sureties on each bond had to pay $10,000.00. He was a fugitive for several months, but things began to close in on him rapidly after he was caught. He pleaded guilty before Judge Hill to the charge of jumping his appeal bond and received a five year sentence to run consecutively to the five year sentence he was already serving in the Dallas wiretapping case. Shortly thereafter, a jury in the federal court case in Fort Worth found him guilty of jumping his bail bond in the Fort Worth wiretapping case, and he received a sentence of five years to begin at the end of the service of the sentence pronounced by Judge Hill.

The jury trial of this wiretapping case in Fort Worth followed. The Court appointed an experienced lawyer designated by Houghton to represent him in this case, but Houghton dominated the strategy. He was extremely vindictive, and did everything possible during the trial to damage his ex-wife and her preacher friend. He took them through the embarrassing details of the intimate transaction they had discussed in the telephone conversation he had recorded, even though the Houghtons had several children by their marriage and some of them were present at the trial. After getting her and the preacher on record, he took the stand to pour salt on their wounds. His testimony amounted to a confession of guilt before the jury. He admitted that he committed the wiretappings with which he was charged; that

4. One of Houghton's convictions was for burglarizing the business office of his old alma mater, Southwestern Theological Seminary, in 1961.

at the time they took place, the Child Support Officer of Tarrant County[5] was pushing him for payment of delinquent payments amounting to about $1200.00 due under order of the state domestic relations court; that he used the tape recordings of the above described telephone conversations between his ex-wife and the preacher to make the preacher pay him the amount due on his delinquent child support payments. Houghton was so sure that the preacher could never afford to say anything about the matter that he took the payment by check and endorsed it over to the Child Support Office. Under the circumstances, Houghton never gave up anything when he changed his plea to guilty.

During the sentence hearing after this Court had accepted the plea of guilty to Count 1, Houghton appeared to have some remorse. He said that the only reason he went to trial on his pleas of not guilty was that he wanted to make his ex-wife and her preacher friend testify and to testify himself so he could air them out. As a man who had had experience in judging reactions of his listeners, he realized that such conduct, with some of the Houghton children present at the trial, lacked a lot of meeting with the approval of those who witnessed it. He said he was going to try to make up for it and his many other wrongs by returning to preaching and attempting to convert his fellow prisoners in the penitentiary. The Judge felt that Houghton must have made the same resolve on at least some of the times he was facing sentence in his state court cases, but with Houghton's confessing and proclaiming repentence, the atmosphere at the sentence hearing was almost like that of a brush arbor, revival camp meeting, and forgiveness was in the air. In spite of his reservations, the Judge got soft and gave Houghton a sentence which added no time to that he already had to serve.

■ The record of the proceedings in the trial before the jury could have no legal value to Houghton even if he were allowed to lint pick to try to find some error to use in preparation of a Section 2255 motion attacking his conviction and sentence in this case. His plea of guilty waived all non-jurisdiction defects in the case. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); United States v. Sepe, 5 Cir., 486 F.2d 1044 (1973).[6] If there were any jurisdiction defects, he would not need a transcript of the testimony to present them. The only purpose such a record could have would be to furnish Houghton with a transcript of the testimony of his ex-wife and the preacher to use as a club over them in an attempt to get something out of them by aiding him in an attempt to get clemency or otherwise.

Houghton has toyed with the courts long enough in these cases. He appealed from the conviction in Judge Hughes' court, but dismissed the appeal when it was nearing disposition. However, the pendency of the appeal gave him a chance to be free on bond, and he utilized his freedom to commit further blackmail with the aid of wiretapping. He jumped bond in two of the cases, causing his sureties to have to pay

---

5. By statute, all child support payments made under order of the Court in some of the more populated counties are paid into the office of the well-staffed Child Support Officer of the county to be disbursed by him to the person having custody of the child for whom they are intended. Parents wilfully defaulting in their child support payments are subject to being fined and jailed for contempt of court. The Child Support Officer is usually aggressive in his attempt to collect delinquent payments where it is justified. Tarrant County, Texas, of which Fort Worth is the county seat, is one of the counties which has a Child Support Officer.

6. There was no question for Houghton to take forward on appeal even if he had been convicted on a jury verdict. If there had been one, it would have had to be momentous to get him anywhere in view of his testimony admitting his guilt. If the Court made any mistake at any stage of these proceedings, it was in not providing that the sentence in this case run consecutively to the ones Houghton already had.

$10,000.00 on bond forfeiture in each case. He appealed from the conviction in Judge Hill's court the day after he was sentenced. The appeal was dismissed on his own motion two weeks after his sentence on his plea of guilty in the present wiretapping case. Thereafter he sought to have the conviction in Judge Hill's court set aside on a Sec. 2255 motion. He appealed from the order denying the motion, but failed to file an appellate brief. The order of denial was affirmed. Houghton v. United States, 5 Cir., 496 F.2d 876. Shortly after sentence was pronounced on him in this case, Houghton filed a notice of desire not to appeal. He used the time of this Court and a jury for three days solely for the purpose of venting his spleen against his ex-wife and the preacher. In the face of all the facts, he now wants the Court to order that he be furnished with a rather lengthy transcript at no cost to him and at the expense of the taxpayers. It would be a mockery of justice to grant the request.

An order will be entered in accordance herewith denying the motion herein discussed.