61 F.3d 912
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Henry BUSTOS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harold SATIZABAL, Defendant-Appellant.
 Nos. 94-50279, 94-50291.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 9, 1995.*
Decided July 26, 1995.
 
 Before: FLETCHER, WIGGINS, FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Defendents-appellants Henry Bustos and Harold Satizabal each pled guilty to one count of conspiracy to distribute a controlled substance (cocaine) in violation of 21 U.S.C. Sec. 846. Soon they regretted having done so. They appeal the denial of their pre-sentencing motions to withdraw their guilty pleas. They also appeal two sentencing decisions of the district court: the denial of a two-level downward adjustment for acceptance of responsibility and the grant of a three-level upward adjustment for role in the offense. The district court had jurisdiction pursuant to 18 U.S.C. Sec. 3231. This court has jurisdiction pursuant to 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742. We affirm.
 
 BACKGROUND
 
 3
 Appellants were indicted on one count of conspiracy to distribute a controlled substance (21 U.S.C. Sec. 846) and two counts of possession with the intent to distribute cocaine (21 U.S.C. Sec. 841(a)(1)) based on their participation in a scheme to infuse cocaine into the fiberglass, mold the fiberglass into dog crates in Columbia, export the dog crates to the United States, and extract cocaine from the fiberglass for resale in the United States. Bustos was the chemist who supervised the infusion and extraction of cocaine into and from fiberglass. Satizabal arranged the exportation and importation of the dog crates and helped supervise the extraction. The operation was masterminded by a Columbian named Diego Otero and facilitated by a confidential informant.
 
 
 4
 Shortly after his arrest, Satizabal confessed to participating in the scheme. Apparently he was at all times willing to consider a guilty plea, but the government's proffered bargain was only available if both defendants pled guilty. Bustos refused to consider the offer.
 
 
 5
 On March 23, 1993, the district court impaneled a jury. That same day, Bustos's counsel brought it to the court's attention that Bustos had not personally had access to certain tapes of conversations between appellants and the CI. Bustos' attorney had reviewed the tapes, but Bustos claims he had not had access to tape players in the detention facility. The court, without deciding whether Bustos had been denied access or whether he had merely failed to avail himself of the opportunity to listen to the tapes, ordered that any problem be remedied. Bustos listened to many of the tapes that night.
 
 
 6
 On March 25, 1993, the second day of trial, after hearing the prosecution's opening argument, Bustos and Satizabal accepted the government's plea offer. Both pled guilty to count one of the indictment, in return for the dismissal of counts 2 and 3, the promise that the government would not seek an upward departure, and the stipulation that the offense would be treated as involving powder cocaine rather than cocaine base or crack.
 
 
 7
 On March 31, 1993, Bustos wrote a pro se letter to the court asking the court to set aside the guilty plea. Among other things, he claimed he was intimidated and coerced into pleading guilty by his attorney and that he was innocent of the charges. Satizabal wrote a similar letter on April 2, 1993. The court appointed new counsel for both defendants, who filed motions to withdraw their pleas under Fed.R.Crim.P. 32. After an evidentiary hearing, the court denied the motions and sentenced each defendant to 189 months' incarceration. Defendants appeal the denial of their Rule 32 motions. They also appeal their sentences, arguing that the district court abused its discretion in denying a two-level downward adjustment based on acceptance of responsibility and in granting a three-level upward adjustment based on management role in a criminal activity involving five or more participants. We affirm.
 
 
 8
 I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO ALLOW THE APPELLANTS TO WITHDRAW THEIR GUILTY PLEAS.
 
 A. STANDARD OF REVIEW
 
 9
 Under Fed.R.Crim.P. 32(e), "the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." The burden of demonstrating a fair and just reason is on the defendant, who has no absolute right to withdraw a plea. See United States v. Castello, 724 F.2d 813, 814 (9th Cir.), cert. denied, 467 U.S. 1254 (1984). This court reviews for clear error the factual findings underlying the denial of a Rule 32 motion, and the court reviews the denial itself for abuse of discretion. Id. at 814, 815. Whether facts found by the district court render a guilty plea involuntary as a matter of law is determined de novo. See Iaea v. Sunn, 800 F.2d 861, 864 (9th Cir.1986).
 
 B. DISCUSSION
 
 10
 Appellants claim their pleas were involuntary for the following reasons: (1) Both appellants claim their attorneys pressured them into pleading guilty. (2) Bustos claims he was pressured by his co-defendant Satizabal, and both appellants point out that the government did not expressly inform the district court the package nature of the plea agreement. (3) Bustos claims he was not permitted to listen to 35-40 tapes of conversations between appellants and government agents until the day before trial. (4) Both appellants claim they suffered inadequate representation, because counsel failed adequately to discuss possible defenses with them. Specifically, only after the plea did appellants learn of the "strength" of their entrapment defense. (5) Appellants claim they were generally tired and confused the day of the plea. None of these arguments has merit.
 
 1. Attorney Pressure
 
 11
 The allegation of undue pressure from appellants' attorneys is based on the claim that one or both attorneys advised their clients that the case was unwinnable, that they faced a hundred-to-one chance of conviction and, if convicted, they would spend their lives in jail. The district court, after inquiring into appellants' allegations, found that this "pressure" amounted only to the sound advice of counsel; there was no evidence that counsel had a motive to pressure their clients into a plea, especially since the attorneys had already prepared for trial; and the advice that defendants would lose at trial was not without basis, in light of the government's "exceedingly strong" case, which was bolstered by Satizabal's confession and 35-40 tapes of conversations between appellants and government agents. Counsel merely made their clients aware of the consequences of not pleading guilty, which does not constitute undue pressure and is not grounds for withdrawing a guilty plea. In light of these findings, the district court found credible appellants' assurances at the Rule 11 hearing that they were entering into the plea voluntarily and without pressure from anyone. The court also found credible counsels' declarations that they had not used undue influence to get the appellants to plead guilty. These findings are not clearly erroneous, and they do not support a claim of involuntariness.
 
 
 12
 2. Codefendant Pressure Stemming From The Package Nature Of
 
 The Plea Agreement
 
 13
 The agreement under which appellants pled guilty was only available if both appellants pled guilty. According to Bustos' declaration, Satizabal initially wanted to accept the government's deal, but Bustos wanted to go to trial. Bustos now claims that, because of the package nature of the deal, he was pressured by Satizabal and Satizabal's attorney into accepting the deal. Specifically, Bustos alleges (but Satizabal's attorney denies) that Satizabal's attorney told Satizabal, in Bustos' presence, that if Satizabal went to prison for more years than the deal offered, Satizabal would have Bustos to thank. Satizabal, who was Bustos' good friend, asked Bustos numerous times to accept the deal. Bustos acknowledges that he received no direct threats from Satizabal, but he claims "the psychological pressure was more than [Bustos] could handle," and he "felt [he] had to plead guilty because [Satizabal] was so scared of getting more years."
 
 
 14
 The acceptability of package deals was confirmed in United States v. Castello, 724 F.2d 813, 815 (9th Cir.1984). Castello held that it was not coercive per se for the prosecutor to threaten to seek a more severe sentence for a co-defendant if no plea agreement was reached; rather, the court should make a more careful examination of the voluntariness of a plea when it is induced by such threats or promises.
 
 
 15
 Both Bustos and Satizabal argue that the requisite inquiry was not made because the government did not explicitly inform the court at the plea hearing that this was a package deal. In United States v. Caro, 997 F.2d 657 (9th Cir.1993), this court held that "the prosecutor must alert the district court to the fact that codefendants are entering a package deal" so that the district court can make a " 'more careful examination' of voluntariness." Id. at 660 (quoting Castello, 724 F.2d at 814-15).
 
 
 16
 We conclude, as did the district court, that the government's omission was harmless for two reasons. First, the district court stated, in its findings on the motion to withdraw the plea, that the court had been aware all along that the agreement was a package deal. The government's failure to say so explicitly, therefore, did not affect the scope of the court's inquiry into voluntariness. Second, at the hearing on the motion to withdraw, the court held an evidentiary hearing and inquired into whether either defendant had been subjected to threats or undue pressure from the other. This remedied any omissions at the Rule 11 hearing.[1]
 
 
 17
 The district court found that the pleas were voluntary. We agree. Neither appellant has alleged that he was the victim of any threats above and beyond the natural consequences of choosing to plead or not plead. A plea is not rendered involuntary merely because the defendant pled under psychological pressure stemming from an awareness of the consequences of failing to plead guilty.
 
 3. Access to Tapes
 
 18
 Both appellants claim they were denied access to certain tapes of conversations with the CI: they were unable to listen to the tapes until the night before the trial was due to start. Appellants argue that lack of access to the tapes kept them from appreciating the strength of their entrapment defense, and therefore their guilty plea was not fully informed.
 
 
 19
 Prior to the plea, Satizabal never mentioned to his attorney any concerns about lack of access to the tapes, and Satizabal did not join in Bustos' Motion To Continue. Therefore, although both Satizabal and Bustos now argue that lack of access kept their plea from being knowing and voluntary, only Bustos has a plausible argument.
 
 
 20
 Bustos brought the problem of access to the attention of the court on the first day of trial, and any access problems were remedied immediately. Bustos claims he was unable to listen to all the tapes before the plea, which was entered two days later; only when he listened to the remaining tapes after the plea did he became aware of the strength of the entrapment defense. Bustos' claim that lack of access to the tapes affected his plea decision is, however, weakened by his statements at the Rule 11 hearing. At that time the court specifically asked Bustos whether he had a chance to listen to the tapes. Bustos stated that he had and that listening to the tapes had helped his basic decision to plead guilty. At the Rule 32 hearing, the court found that the damaging content of the tapes had been pivotal in persuading Bustos to forego a trial. The district court's finding that Bustos was not prejudiced by lack of access to the tapes is not clearly erroneous.
 
 4. Ineffective Assistance of Counsel
 
 21
 In order to attack a guilty plea as based on inadequate legal advice, the defendant must show that "counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases.' " Strickland v. Washington, 446 U.S. 668, 687 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). The defendant must also demonstrate prejudice stemming from the inadequate advice. Strickland, 466 U.S. at 687; Iaea, 800 F.2d at 865.
 
 
 22
 Appellants claim they suffered generally inadequate representation prior to their guilty pleas. Neither of the specific allegations of ineffective assistance meets the Strickland standard.
 
 
 23
 First, appellants claim, and counsel deny, that counsel did not discuss the entrapment defense with them. The entrapment defense was not viable: both appellants were clearly predisposed to commit the offenses. When the CI spoke to Satizabal for the first time, Satizabal told the CI he had already shipped one dog crate to the United States. The CI's initial contact with Bustos occurred at a time when Bustos was already involved with Diego Otero, a Columbian drug trafficker. Bustos met the CI after Otero contacted the CI and asked the CI to allow Bustos to stay with the CI temporarily. During the stay, Bustos explained to the CI that he was a chemist for Columbian drug traffickers. Because the entrapment defense was not viable, appellants were not prejudiced even if counsel did not discuss that defense with them. There is no basis for withdrawing the plea on this account.
 
 5. General Confusion
 
 24
 Appellants claim they were generally tired and confused the day of the plea. The district court specifically found that both appellants' minds had been clear at the time of the plea, and appellants have pointed to no specific facts that undermine this finding.
 
 C. CONCLUSION
 
 25
 None of the grounds advanced by either appellant indicates that the pleas were involuntary. Allowing appellants to withdraw their pleas would have resulted in significant replicated expenses: a second jury would have to be impaneled and opening statements would have to be delivered a second time. In the absence of a fair and just reason for releasing appellants from their pleas, the district court did not abuse its discretion in denying the motions to withdraw the pleas.
 
 
 26
 II. THE DISTRICT COURT DID NOT ERR IN DENYING A TWO-LEVEL DOWNWARD ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY
 
 
 27
 Both appellants argue that the district court abused its discretion by denying a two-level downward adjustment for acceptance of responsibility and by enhancing their offense levels by three levels for role in the offense.
 
 A. STANDARD OF REVIEW
 
 28
 This court's reviews for clear error the district court's denial of a reduction for acceptance of responsibility. See United States v. McKinney, 15 F.3d 849, 852 n. 6 (9th Cir.1994). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. Sec. 3E1.1. n. 5 (1992).
 
 B. DISCUSSION
 
 29
 The burden is on defendants to show acceptance of responsibility. See United States v. Rosales, 917 F.2d 1220, 1222 (9th Cir.1990). The mere fact that Bustos and Satizabal pled guilty does not entitle them to the downward adjustment. S.G. 3E1.1 n. 3. They have discussed the fact that acceptance of responsibility is not inconsistent with their continuing to maintain a claim of legal innocence based on entrapment, and they stress that the adjustment should not have been denied on that basis alone. They have, however, failed to put forth sufficient affirmative evidence to refute the district court's finding that, even after their pleas, appellants sought to avoid responsibility by downplaying their involvement in the drug conspiracy and blaming others for what occurred. Appellants point only to the bare fact that they pled guilty and to their own post-plea statements, which the court was entitled to view with skepticism, especially when these expressions were interspersed with regret at having pled guilty at all.
 
 
 30
 Although it is theoretically possible to accept responsibility for wrongdoing while continuing to assert the defense of entrapment, appellants did not successfully walk that fine line. Their statements in favor of withdrawing their guilty pleas cast doubt on the sincerity of their contrition for their own roles. Bustos' declaration states:
 
 
 31
 All during the questioning by the judge concerning my guilty plea, I wanted to tell him I was not guilty. By then I was morally weakened. I did not have the courage to back out of the guilty plea. I thought I was doing the best I could for Satizabal and I felt like I had to accept the deal.
 
 
 32
 Satizabal did not claim to be innocent after the plea, but he continued up through sentencing to try to minimize his own role in the crime. He insisted that he had been coerced, pressured, directed and entrapped by Otero, Otero's mother, and the CI. He argued that his own role had been merely to carry out orders; and he conveniently overlooked the fact that he had invested over $10,000 of his own money in the scheme to buy materials.
 
 
 33
 We conclude that the district court was entitled to discount the appellants' statements of contrition and deny the downward adjustment for acceptance of responsibility.
 
 
 34
 III. THE DISTRICT COURT DID NOT ERR IN GRANTING AN UPWARD ADJUSTMENT OF THREE LEVELS BASED ON APPELLANTS' ROLES IN THE OFFENSE
 
 A. STANDARD OF REVIEW
 
 35
 It is a question of fact reviewed for clear error whether, for purposes of a three-level upward adjustment under U.S.S.G. Sec. 3B1.1(b), appellants were managers or supervisors of a criminal activity that involved five or more participants or was otherwise extensive. United States v. Monroe, 943 F.2d 1007, 1019 (9th Cir.1991), cert. denied, 503 U.S. 971 (1992).
 
 B. DISCUSSION
 
 36
 The district court was entitled to find that the criminal activity involved five or more participants: Satizabal named nine in his post-arrest statement. Appellants insist that there was no proof that they managed or supervised five or more, but such proof is not required: to be eligible for the upward adjustment, each defendant need only have managed or supervised one other participant in an organization of five or more participants. See United States v. Helmy, 951 F.2d 988, 997 (9th Cir.1991), cert. denied, 504 U.S. 945 (1992) (emphasis added). There can be more than one manager or supervisor in a conspiracy. Monroe, 943 F.2d at 1019. "Where ... a defendant exercises decisionmaking authority and an organizational role, an upward adjustment under Sec. 3B1.1 is appropriate." Id. Both appellants have met this criterion.
 
 
 37
 Bustos was the chemist in charge of producing cocaine-laden fiberglass and later extracting the cocaine. In this capacity, he was in charge of dictating to others what he needed to assemble his laboratory and what assistance others might give him in refining cocaine. Bustos admits he was "assisted by" the CI in extracting the cocaine. Bustos was also integrally involved with Otero and another individual in developing the plan of using cocaine-laden fiberglass in dog crates, and his first trip to the U.S. was to check on the work of other chemists extracting cocaine from suitcases.
 
 
 38
 Bustos stresses: (1) that his chemical work was not technologically sophisticated; (2) that the whole scheme was orchestrated by the FBI; (3) that he acted under the direction and control of the scheme's leaders, including FBI informants; (4) that he was not paid much; and (5) that organizing the extraction of cocaine does not make him a manager. We conclude, nevertheless, that in organizing the extraction of cocaine, Bustos exercised decisionmaking authority and directed other participants sufficiently to qualify him for the upward adjustment.
 
 
 39
 Satizabal told the CI in a recorded conversation that he was supervising the chemist who was infusing the cocaine into the second and third dog crates. He explained to the CI that he was the one who had located the chemist to manufacture the second and third dog crates and paid the chemist for his services. This is sufficient to make him a manager or supervisor.
 
 
 40
 Appellants' convictions and sentences are AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Appellants argue that a Caro error (failure to inform the court of the package nature of the deal at the Rule 11 hearing) cannot be remedied by a subsequent inquiry into voluntariness. This view is contradicted by Caro itself. In Caro, this court remanded for a full hearing on the defendant's motion to withdraw his plea. The district court was to ascertain whether the defendant entered his plea because of threats or pressures from his codefendants. This court indicated that if the district court found the defendant's assertions of codefendant pressure baseless, the error at the Rule 11 (plea-taking) stage would be rendered harmless. Caro, 997 F.2d at 660