MEMORANDUM *
Carlos Soto-Lopez appeals the district court’s denial of his 28 U.S.C. § 2255 habe-as petition, in which he requested that the district court vacate his sentence. Soto-Lopez argues that his sentence should be vacated because he received ineffective assistance of counsel from attorney Christian De Olivas, who advised him to reject a favorable “fast-track” plea offer. The district court dismissed Soto-Lopez’s petition, finding that the facts alleged by Soto-Lopez did “not me[e]t his burden to overcome the strong presumption that counsel’s conduct fell ‘within the wide range of professional assistance.’ ” Soto-Lopez v. United States, No. 07CR3475-IEG, 2011 WL 176026, at *4 (S.D.Cal. Jan.19, 2011) (quoting Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The district court granted a certificate of appealability.
We have jurisdiction over Soto-Lopez’s timely appeal. 28 U.S.C. § 2253(c). We review the district court’s denial of Soto-Lopez’s § 2255 petition for a writ of habeas corpus de novo. United States v. Fredman, 390 F.3d 1153, 1156 (9th Cir.2004). Because “a district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are palpably incredible or patently frivolous,” United States v. Withers, 638 F.3d 1055, 1062-63 (9th Cir.2011) (citation omitted), we reverse.
As the Supreme Court recently confirmed, “[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process.” Lafler v. Cooper, — U.S. -, 132 S.Ct. 1376, 1384, 132 L.Ed.2d 398 (2012). The right to effective assistance of counsel in evaluating a plea offer is not contingent on whether a defendant ultimately accepts or rejects a plea. See id. To prove ineffective assistance during the plea phase of a prosecution, a petitioner “ ‘must demonstrate gross error on the part of counsel....’” Turner v. Calderon, 281 F.3d 851, 880 (9th Cir.2002) (quoting McMann v. Richardson, 397 U.S. 759, 772, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). “Counsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision.” Id. at 881.
Citing Turner v. Calderon, the district court found that Soto-Lopez had the tools he needed to make an intelligent decision about rejecting the plea deal.[1] See Soto- *146 Lopez, 2011 WL 176026, at *4. However, the facts here are easily distinguishable from Turner, where “counsel and Turner chose to proceed to trial based on counsel’s defense strategy and presumably sincere prediction that the jury would not award a sentence of death,” Turner, 281 F.3d at 881. Soto-Lopez has sufficiently alleged facts that overcome the presumption that De Olivas’s advice was based on a sincere trial strategy. He has alleged that, as a result of representations by an inexperienced lawyer who was concurrently engaged in a dizzying range of unprofessional conduct, he rejected a fast-track plea, jettisoned his court-appointed attorney, and ultimately pleaded guilty to a much more serious charge than set forth in the plea agreement he had rejected, with no plea agreement in place.
Soto-Lopez alleges that De Olivas — operating in a district court in which he had very little experience — persuaded Soto-Lopez to reject both his court-appointed lawyer and the government’s 48-month fast-track deal, and instead pay $4,000 to De Olivas, representing that he could secure a 24- to 30-month deal. By rejecting the fast-track deal, Soto-Lopez’s statutory maximum exposure increased from 54 months for three § 1325 charges to twenty years for one § 1326 charge. While the § 1326 charge was pending, De Olivas filed no dispositive motions, and Soto-Lopez ultimately pleaded guilty to the § 1326 charge with no plea agreement in place.
De Olivas had little basis for recommending that Soto-Lopez reject the fast-track offer beyond a desire to persuade Soto-Lopez to retain his services in place of the Federal Defenders. There is no evidence that De Olivas had any experience with persuading prosecutors in the Southern district to improve plea agreements, no indication that De Olivas knew of any legal defense that Soto-Lopez could utilize at trial, and no evidence that — at the time he advised Soto-Lopez to reject the plea offer — De Olivas knew of any reason Soto-Lopez could reasonably expect the government to offer him a 24- or 30-month plea deal when he faced a minimum 77-month sentence under the Guidelines.
These facts must be considered in combination with a petition filed by the Standing Committee on Discipline for the Southern District (“disciplinary petition”) that led to De Olivas’s suspension during the pendency of Soto-Lopez’s sentencing, and which details De Olivas’s systematic unprofessional conduct in the Southern District of California. While “the fact that an attorney is suspended or disbarred does not, without more, rise to the constitutional significance of ineffective counsel under the Sixth Amendment,” United States v. Mouzin, 785 F.2d 682, 696-97 (9th Cir. 1986), “counsel’s disbarment or suspension may raise doubts about his competence,” United States v. Ross, 338 F.3d 1054, 1056 (9th Cir.2003). The disciplinary petition charges De Olivas with unprofessional conduct in other cases, including making false statements, and conduct that “plac[ed his] financial motivations above the interests of his client and expos[ed] his client to prejudice and delay.” The district court itself noted at sentencing that Soto-Lopez “probably [was] the victim of why [De Olivas was] no longer practicing.”[2] Under *147 Strickland, we must try “to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. When the serious doubts about De Olivas’s professionalism and honesty occasioned by his contemporaneous conduct are combined with the facts of his representation of Soto-Lopez, the record supports Soto-Lopez’s claim that De Olivas provided him ineffective assistance of counsel.[3]
When a defendant alleges that a violation of the right to counsel resulted in the defendant’s rejection of a favorable plea offer, the
“defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer’s terms would have been less severe than under the judgment and sentence that in fact were imposed.”
Lafler, 132 S.Ct. at 1385. The district court did not address the question of prejudice because it concluded that De Olivas’s representation was not deficient. The government’s brief likewise does not address prejudice.
Soto-Lopez has alleged sufficient facts to show prejudice: If De Olivas had not counseled Soto-Lopez that he could receive a 24-or 30-month sentence, and instead been adequately advised as to the dramatic differences in potential sentences, Soto-Lopez would not have rejected the government’s plea based on three counts of illegal entry in violation of 8 U.S.C. § 1325. Until De Olivas advised Soto-Lopez to withdraw from the deal, both the government and Soto-Lopez were taking the procedural steps towards satisfying the terms of the fast-track deal. If Soto-Lopez had not abruptly changed course once he encountered De Olivas, he would then have received the benefit of the 48-month plea offer, and in any event could have received no more than the statutory maximum of 54 months for the three counts of illegal entry. There is no evidence that the district court had cause to exercise its discretion to reject fast-track plea agreements.
In accordance with 28 U.S.C. § 2255(b), Soto-Lopez is entitled to a prompt eviden-tiary hearing as to his claims of ineffective assistance. We therefore remand and direct the district court to make findings of fact concerning Soto-Lopez’s allegations. *148 If Soto-Lopez’s factual allegations are determined to be true,
the correct remedy in these circumstances ... is to order the [Government] to reoffer the plea agreement. Presuming respondent accepts the offer, the [district] court can then exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence ... undisturbed.
Lafler, 132 S.Ct. at 1391; Fed.R.Crim.P. 11(c)(3)(A), (c)(5) (giving district courts the right to reject a charge bargain of the type specified in Rule 11(c)(1)(A)).
REVERSED and REMANDED with instructions.

 This disposition is not appropriate for publication and is not precedent except as provided by 9 th Cir. R. 36-3.

. In finding that Soto-Lopez had the tools he needed to make an intelligent decision, the court relied in part on evidence that, before Soto-Lopez was represented by De Olivas, Soto-Lopez's court-appointed counsel had explained to him that if he rejected the plea he would be indicted for illegal reentry and would face a Guidelines range substantially higher than the 48 months the government had offered. That Soto-Lopez was properly advised by the Federal Defenders before he was represented by De Olivas does nothing to demonstrate that De Olivas provided effective assistance. Soto-Lopez's ineffective assistance claim centers on whether De Olivas's "representation fell below an objective standard of reasonableness.” Strickland, 466 U.S. at 688, 104 S.Ct. 2052. The Federal Defenders’ performance is irrelevant to this inquiry, especially because during the time he *146 represented Soto-Lopez, De Olivas advised him that the Federal Defenders had provided the wrong advice.

. Soto-Lopez further alleges that after De Oli-vas’s conduct was exposed, the government apparently recognized that De Olivas had defrauded a number of defendants who rejected fast-track plea deals on De Olivas's advice, and consequently re-extended fast-track plea offers to these defendants. At argument, the government offered no convincing explana *147 tion as to why it treated Soto-Lopez differently from several of De Olivas’s other former clients.

. The dissent asserts that Soto-Lopez’s decision against withdrawing his guilty plea after learning that De Olivas was suspended from practice indicates that Soto-Lopez made an informed, strategic choice to reject the earlier fast-track deal offer. This is not so. By the time he learned that De Olivas had been suspended, Soto-Lopez had no reasonable choice but to proceed to sentencing. The government had withdrawn the fast-track plea offer, and Soto-Lopez had no legal defense to the § 1326 violation with which he was now charged. With nothing to gain by withdrawing his guilty plea (and the possibility of losing any acceptance of responsibility credits at sentencing), Soto-Lopez had no option to proceed other than he did. The decision not to withdraw his guilty plea is equally irrelevant to the prejudice inquiry. That Soto-Lopez did not withdraw the guilty plea months after the fast-track plea offer had been rescinded provides no support for the dissent's claim that without De Olivas’s intervention — which eliminated the possibility of the fast-track deal — Soto-Lopez would have been put in the same position.