[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14638
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cv-01869-ACC-DCI

WILLIAM ARTHUR BISHOP,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF
CORRECTIONS,
ATTORNEY GENERAL, STATE OF
FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 17, 2019)

Before WILSON, MARTIN, and NEWSOM, Circuit Judges.

PER CURIAM:

William Bishop is a Florida prisoner.  He is serving 30 years' imprisonment for crimes connected to the molestation of a young girl near a pool at a Disney resort.  He appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus.

Bishop makes two arguments.  He first says that his counsel was ineffective for not impeaching his victim's father, James Lanza, about a possible financial interest that Lanza may have had in Bishop's conviction.  He then argues that the district court failed to resolve his claim that his counsel was ineffective for failing to seek a hearing to address the potential effect of pretrial publicity on his trial, violating *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992) (en banc).

We affirm the district court on the first point.  We vacate and remand on the second.

## I.

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), guides our analysis of a federal habeas petition. *Downs v. Sec'y, Fla. Dep't of Corr.*, 738 F.3d 240, 256 (11th Cir. 2013).  And we review de novo a district court's denial of a federal habeas petition based on ineffective assistance of counsel. *Johnson v. Sec'y, DOC*, 643 F.3d 907, 929 (11th Cir. 2011).

"Section 2254(d) reflects Congress' decision to restrict federal courts' authority to grant habeas relief to cases in which the state court's decision unquestionably conflicts with Supreme Court precedent." *Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298, 1301 (11th Cir. 2019).  Once a state court has adjudicated a claim on the merits, a federal court may grant habeas relief only if the state court's decision was (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts given the evidence presented to the state court.  28 U.S.C. § 2254(d).  To justify federal habeas relief under these standards, "the state court's decision must be so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Nance*, 922 F.3d at 1301 (internal quotation mark omitted).

As for ineffective assistance, the Sixth Amendment gives criminal defendants the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  To succeed on an ineffective-assistance claim, a movant must show that (1) his attorney's conduct was deficient, and (2) the deficient conduct prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

When considering whether counsel's performance was deficient, we review counsel's actions in a "highly deferential" manner and apply "a strong presumption . . . of reasonable professional assistance." *Johnson*, 643 F.3d at 928. To overcome this presumption, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Id.* Then, to establish prejudice, a petitioner must show "that, but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *Id*.

Under these stacked standards of deference, showing that "a state court's application of *Strickland* was unreasonable . . . is all the more difficult." *Downs*, 738 F.3d at 258. For when "the highly deferential standards mandated by *Strickland* and AEDPA both apply, they combine to produce a doubly deferential form of review that asks only whether there is any reasonable argument that counsel satisfied *Strickland*['s] deferential standard." *Id*. (internal quotation mark omitted). It is thus "a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Nance*, 922 F.3d at 1303 (internal quotation mark omitted).

Bishop cannot overcome this double deference here, as the state court's finding that Bishop was not prejudiced by his counsel's failure to impeach Lanza about a possible financial motive does not fall within either of § 2254(d)'s relief

4

standards.  To start, the victim, JL, identified Bishop—both on the day of the incident and in court—as the man who touched her.  JL made her in-court identification after testifying that she knew the difference between the truth and a lie and promised to tell the truth.  Her testimony tracked her videotaped child forensic interview from the day of the incident.  And although Bishop implies that JL was the only witness to her being touched, witness David Silva Jr. corroborated JL's testimony, swearing that he saw Bishop touching JL.

To be sure, Bishop argues that Lanza had an incentive to tell JL to lie given a possible financial interest in a lawsuit against the resort at which the crime occurred. He claims that this evidence, if drawn out, would have undermined JL's testimony. But the prosecution did not hinge solely on JL's testimony.  Fellow resort-attendee Silva Jr. corroborated JL's story when he told his father, David Silva Sr., that he saw Bishop touching JL.  Silva Sr. then conveyed this information to resort lifeguard Michael Charette, who in turn found Bishop with JL behind the shed.  Further, all three of them testified that they saw a man with JL *before* Lanza learned about the incident; all three of them identified Bishop as that man in court; and none of them have a purported financial interest in Bishop's conviction.

To this Bishop asserts that Silva Jr.'s and Silva Sr.'s identifications are suspect because they stem from repeatedly seeing his picture during their media appearances.  But Silva Sr. testified that his identification of Bishop was based on

5

his observation of Bishop from the day of the incident, not from Bishop's media presence. Given all this, there is a reasonable argument that Bishop's counsel satisfied *Strickland*'s deferential standard because multiple uninterested witnesses corroborated JL's and Lanza's testimony, and therefore any failure to impeach Lanza does not undermine confidence in Bishop's conviction, even if this failure constituted deficient performance. *See Strickland*, 466 U.S. at 687, 694, 697; *Downs*, 738 F.3d at 258; *Johnson*, 643 F.3d at 928. Bishop thus has not shown that the state court's finding was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *See Nance*, 922 F.3d at 1301. The district court properly denied relief.

## II.

In *Clisby*, we held that when a district court fails to address all the claims in a § 2254 petition, we "will vacate the district court's judgment without prejudice and remand the case for consideration of all remaining claims." 960 F.2d at 938 (noting that we will vacate and remand "*whenever* the district court has not resolved all such claims" (emphasis added)). We defined a "claim for relief" in *Clisby* as "any allegation of a constitutional violation." *Id*. at 936.

In *Williams v. Griswald*, we held that it is "well established that prejudicial publicity may deprive a criminal defendant of the constitutional right to a fair trial." 743 F.2d 1533, 1537 (11th Cir. 1984). To prevail on a pretrial-publicity

claim, a defendant must show that pretrial publicity caused either actual or presumed prejudice. *Mills v. Singletary*, 63 F.3d 999, 1009 (11th Cir. 1995).

We conclude that the district court committed *Clisby* error because Bishop asserted a constitutional claim—i.e., his counsel should have moved for a bias-determination hearing to address the effect that the media may have had on his trial—that the district court did not address when it dismissed Bishop's petition. *See Clisby*, 960 F.2d at 936, 938; *Williams*, 743 F.2d at 1537. Indeed, Bishop's claim was part of his overall ground for relief that his counsel was ineffective for failing to impeach witnesses for their biases and alternative motives, and *Clisby* suggests that we must remand whenever a district court fails to address and resolve all constitutional claims—including claims that the petitioner groups into an overall ground for relief—regardless of harmless error. *See Clisby*, 960 F.2d at 934–36, 938.

Though the state argues that the district court inherently addressed the factual basis for Bishop's pretrial-publicity claim when it addressed his overall ground for relief, the district court's only finding related to that issue was that Bishop's counsel cross-examined Silva Jr. and Silva Sr. about their media appearances and identification of Bishop. The district court did not address the specific issue of whether counsel was ineffective for failing to seek a hearing on whether these media appearances caused either actual or presumed prejudice and thus deprived Bishop of

his constitutional right to a fair trial.  *See Mills*, 63 F.3d at 1009; *Williams*, 743 F.2d at 1537.  In fact, the state concedes that the district court did not address this issue.

The court thus committed *Clisby* error because it did not specifically address Bishop's claim that his counsel was ineffective for failing to seek a hearing to address the potential effect of pretrial publicity on Bishop's trial.  We therefore vacate the district court's denial of habeas relief on this discrete issue and remand to the district court for consideration.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

8