[Cite as *State v. Rossing*, 2020-Ohio-885.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

    Plaintiff-Appellee,                    :

                                  No. 18AP-784

v.                                               :        (M.C. No. 2017CRB-26309)

Douglas J. Rossing,                              :        (REGULAR CALENDAR)

    Defendant-Appellant.                  :

---

## D E C I S I O N

Rendered on March 10, 2020

---

**On brief:** *Zachary M. Klein*, City Attorney, and *Orly Ahroni*, for appellee.

**On brief:** *Yeura Venters*, Public Defender, and *George M. Schumann*, for appellant. **Argued:** *George M. Schumann*.

---

APPEAL from the Franklin County Municipal Court

KLATT, J.

{¶ 1} Defendant-appellant, Douglas J. Rossing, appeals his conviction, following a jury trial held in the Franklin County Municipal Court, on one count of violating a protection order in violation of R.C. 2919.27, a misdemeanor of the first degree. For the following reasons, we affirm.

{¶ 2} Appellant and Rebecca Rossing ("Mrs. Rossing") were married in 2002. One child was born as issue of the marriage: C.R., who was 15 years old at the time of trial. By early December 2017, appellant and Mrs. Rossing had been estranged for some time. Appellant and C.R. lived in the marital residence full-time; Mrs. Rossing stayed there only when appellant was not present.

{¶ 3}   On December 12, 2017, Mrs. Rossing obtained an ex parte civil protection order ("CPO") against appellant from the Franklin County Court of Common Pleas, Division of Domestic Relations, pursuant to R.C. 3113.31.   In pertinent part, the CPO granted exclusive possession of the marital residence to Mrs. Rossing and ordered appellant to immediately vacate the home and surrender all means of access thereto.   The CPO also required appellant to stay 500 feet away from Mrs. Rossing and C.R. and not initiate or have any contact with either of them.   As set forth in the CPO, "[c]ontact includes, but is not limited to, telephone, fax, e-mail, voice mail, delivery service, writings, or communications by any other means in person or through another person."   (State's Ex. 1 at 3.)   The CPO further prohibited appellant from removing, damaging, hiding, or disposing of any property owned by Mrs. Rossing or C.R.   The CPO set the matter for a full hearing on December 18, 2017.   Although the CPO granted Mrs. Rossing exclusive possession of the residence, she and C.R. did not reside there after December 12, 2017.

{¶ 4}   On December 15, 2017, Franklin County Deputy Sheriff Brian Rhodes unsuccessfully attempted to serve appellant with the CPO at two separate locations, including his place of employment.[1]   Rhodes left his business card with an employee at appellant's workplace and told the employee to have appellant contact him; appellant never did so.

{¶ 5}   Mrs. Rossing appeared for the December 18, 2017 full hearing on the CPO; appellant did not appear.   By entry filed the same day, the court continued the hearing to January 22, 2018 based upon a finding that appellant was not served with the CPO.   The court ordered that the CPO remain in effect until January 22, 2018.

{¶ 6}   On December 19, 2017, Mrs. Rossing went to the residence to retrieve some personal items.   She discovered that the utilities had been turned off, the pipes had frozen, the house had been "ransacked," and several valuable items had been removed from the premises.   (Tr. 143-44, 151-52, 175, 176.)   She immediately called 911, informed the police dispatcher that a CPO had been issued against appellant, and reported the condition of the house.   She then called appellant on his cell phone, and the two spoke for several minutes.[2]

---

[1] Rhodes testified that a previous attempt at service had been unsuccessful.

[2] At trial, Mrs. Rossing testified that she could not recall the substance of the conversation.

{¶ 7}   Columbus Police Officers Phillip Rogers and Thomas Hand were dispatched to the residence on a reported "violation of protection order."  (Tr. at 224.)  Mrs. Rossing provided the officers a copy of the CPO and told them that she believed appellant had been avoiding service. After Officer Rogers confirmed with police authorities that the CPO had not been served on appellant, he directed Mrs. Rossing to call appellant from her cell phone. She did so at 8:32 p.m.  During the call, which lasted approximately 40 seconds, Officer Rogers identified himself as a Columbus police officer, provided his badge number, told appellant that Mrs. Rossing had obtained a CPO against him, identified the case number associated with the CPO and began reciting the specific terms of the CPO.  At some point during the conversation, appellant interrupted Officer Rogers, stated that he could not be certain Officer Rogers was a police officer, and hung up on him.   Thereafter, between 8:43 p.m. and 9:51 p.m., appellant and Mrs. Rossing exchanged the following text messages:

[Appellant]:   Please hit reset, I'll give Anger Management
Pay more bills
Try and fix..Please
Lawyer Joe Reinier * * * call him

[Mrs. Rossing]: Officer Rogers says you have a warrant…violated cpo

[Appellant]:  I'm protecting property I bought I will conform tomorrow To what my lawyer says

[Appellant]:  Holes in my house I removed my property
Love you

[Appellant]:  I have not been served

[Appellant]:  Please stop

[Appellant]:  Let me fix my error

[Appellant]:  I will conform don't arrest me

[Appellant]:  I need to work

[Mrs. Rossing]:  In a panic where is my cat

[Appellant]:  I have cat, you have not been home in weeks, You abandoned the home, me, the cat. Did u talk to lawyer, Can I work I will conform to law

(State's Ex. 3, 4, 5.)  (Sic passim.)

{¶ 8}    Following this text exchange, appellant was charged by complaint with one count of violating a protection order in violation of R.C. 2919.27(A)(1).  The complaint alleged that appellant recklessly violated the terms of the CPO by texting and calling Mrs. Rossing on December 19, 2017.  The affidavit in support of probable cause alleged:

> On 12/19/17 at approximately 8:50pm, the suspect contacted the protected party through text and a phone call.  Officers were shown the court paperwork Case # 17DV121769, Judge Gill, Magistrate Black.  Officer Rogers had advised Mr. Rossing of the protection [sic] on 12/19/17 at approximately 8:45 pm (before the violation).  Officers filed a violation of protection order warrant for Mr. Rossing.

{¶ 9}    The matter was tried to a jury over four days in August and September 2018. In addition to testimony provided by Mrs. Rossing, Deputy Rhodes, Officer Rogers, and Officer Hand, the parties entered five stipulations into the record:  (1) the CPO was validly entered pursuant to R.C. 3113.31; (2) the CPO was in effect on December 12, 2017; (3) the CPO was in effect on December 19, 2017; (4) the text messages entered into the record were authentic; and (5) the phone log entered into the record was authentic.

{¶ 10}    At the close of the evidence, appellant moved for judgment of acquittal pursuant to Crim.R. 29 on grounds that Officer Rogers' truncated phone call with appellant did not constitute "informing" appellant that the CPO had been issued against him pursuant to R.C. 2919.27(D) and that the state's evidence was insufficient to establish that appellant had recklessly violated the terms of the CPO. (Tr. at 311.)  After the state responded, the trial court denied the motion.

{¶ 11}    Following deliberations, the jury found appellant guilty as charged in the complaint.  Thereafter, the trial court sentenced appellant in accordance with law.

{¶ 12}    Appellant timely appeals, advancing a single assignment of error for our review:

> Trial counsel rendered ineffective assistance in violation of the Defendant's rights to counsel and to a fair trial under U.S. Const. Amend. V, VI, and XIV, and Ohio Const. Art[.] I, [Sections] 10 and 16.

{¶ 13}    Appellant's assignment of error contends that he was denied his right under the federal and state constitutions to the effective assistance of counsel during his trial.

Appellant contends that his counsel provided deficient representation in failing to object to "repeated irrelevant and unfairly prejudicial bad character evidence and evidence of other bad acts." (Appellant's brief at 9.)  Appellant further contends that "after the irrelevant and unfairly prejudicial evidence was presented, defense counsel elicited additional irrelevant and unfairly prejudicial details about the inadmissible evidence, thus compounding the prejudicial effect of the evidence." *Id.*  Appellant further argues that defense counsel failed to request a cautionary or limiting instruction regarding this evidence.  Appellant maintains that the evidence had no bearing on whether appellant was guilty of the charged offense; however, the jury "was free to use the irrelevant and unfairly prejudicial evidence to find guilt." *Id.*  Appellant contends that defense counsel's unreasonable errors individually, as well as cumulatively, rendered the jury's guilty verdict unreliable, thus depriving him of his constitutional right to a fair trial.

{¶ 14} "The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel." *State v. Belmonte,* 10th Dist. No. 10AP-373, 2011-Ohio-1334, ¶ 8, citing *McMann v. Richardson,* 397 U.S. 759, 771 (1970). Courts employ a two-step process in determining whether the right to effective assistance of counsel has been violated. *Belmonte* at ¶ 8, citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  The defendant must first demonstrate that counsel's performance was deficient.  To so demonstrate, the defendant must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Belmonte* at ¶ 8.  The defendant must then demonstrate that the deficient performance prejudiced the defense.  To do so, the defendant must prove that counsel's errors were so serious that the defendant was deprived of a fair trial, i.e., a trial whose result is reliable. *Id.,* citing *Strickland* at 687.  A defendant's failure to prove either part of the test makes it unnecessary for a court to consider the other part. *State v. Richardson,* 10th Dist. No. 18AP-310, 2019-Ohio-3490, ¶ 22, citing *Strickland* at 697-98.

{¶ 15}  In Ohio, a properly licensed attorney is presumed to be competent. *Belmonte* at ¶ 8.  Thus, in demonstrating deficient performance, the defendant must overcome the strong presumption that counsel's performance was adequate. *Belmonte* at ¶ 9, citing *State v. Smith,* 17 Ohio St.3d 98, 100 (1985).  In demonstrating prejudice, the defendant must prove that there exists a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different. *Belmonte* at ¶ 9, citing *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. "A verdict adverse to a criminal defendant is not of itself indicative that he received ineffective assistance of trial counsel." *In re J.J.A.,* 10th Dist. No. 09AP-242, 2010-Ohio-672, ¶ 14, citing *State v. Hester,* 45 Ohio St.2d 71, 75 (1976).

{¶ 16} As relevant here, R.C. 2919.27(A)(1) provides that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued * * * pursuant to section * * * 3113.31 of the Revised Code."  In addition, R.C. 2919.27(D) provides, in part, that "[i]n a prosecution for a violation of this section, it is not necessary for the prosecution to prove that the protection order * * * was served on the defendant if the prosecution proves that * * * a * * * law enforcement officer informed the defendant that a protection order * * * had been issued, and proves that the defendant recklessly violated the terms of the order."

{¶ 17} Appellant asserts that evidence offered at trial establishing the reasons for issuance of the CPO, that Mrs. Rossing feared him, that he excluded her from the marital home, that he damaged the marital home rendering it unlivable, that he did not financially support his family, and that he was violent, unfaithful, and a bad husband was irrelevant to the determination of the only two factual issues involved in the case, i.e., whether appellant had been informed by a law enforcement officer of the issuance of the CPO and, if so, whether he recklessly violated one or more of the terms of the CPO.  The bulk of the evidence noted above was offered by, and elicited from, Mrs. Rossing; Officer Rogers also testified about Mrs. Rossing's fear of appellant.  Appellant asserts that this irrelevant and/or bad character evidence, individually and/or cumulatively, unfairly prejudiced his defense.

{¶ 18} A review of the record reveals the following. During voir dire, the prosecution told the prospective jurors that no evidence would be presented regarding the parties' backgrounds or the impetus for the CPO.  Despite this statement, the prosecution questioned Mrs. Rossing about "the process [of] filing for a protection order and what happened." (Tr. at 138.)  In response, Mrs. Rossing averred that she sought a CPO because appellant "attacked" her son. *Id.*

{¶ 19} The prosecution also questioned Mrs. Rossing about events that occurred between the issuance of the CPO on December 12, 2017 and appellant's alleged violation of

the CPO on December 19, 2017. These questions prompted Mrs. Rossing's testimony that she was "afraid to [go home]" (Tr. at 143), that she sought a police escort on three occasions to accompany her to the residence to retrieve personal items, that appellant had prevented the only access to the house by removing the garage door keypad, and that she ultimately had to break a window in the house in order to get food to the family cat.

{¶ 20} The prosecution also questioned Mrs. Rossing about events that occurred on December 19, 2017 prior to her communication with appellant. These questions elicited testimony that appellant had "ransacked" the house, turned off the utilities, and taken numerous valuable items. (Tr. at 144.) In addition, the prosecution played the 911 call Mrs. Rossing made on December 19, 2017, during which that call Mrs. Rossing reported that appellant had "destroyed" the house, turned off the utilities, accessed her financial records without her authorization, and that she had to get into the house before appellant ruined her financially. (911 call, State's Ex. 6.)

{¶ 21} On cross-examination, defense counsel initiated a line of questioning about the extent of the Rossings' cell phone communication over the course of their marriage. In response, Mrs. Rossing averred that appellant often did not answer his phone, citing as a specific example, "when he had his affair, I was calling and chasing him all over town. And I would only get threats back when he would answer three days later that I better stop calling his phone." (Tr. at 155.)

{¶ 22} Defense counsel also elicited testimony from Mrs. Rossing about her two-week absence from the marital residence prior to December 12, 2017. She averred, "[a]s [appellant's] violence escalated, I stayed away more. * * * I seemed to be the match that lit the fuse. And if I removed myself from the situation, he had always calmed down." (Tr. at 157.) She further stated, "[b]ut for whatever reason, the last time, which gave me the courage to finally file a CPO, because it wasn't the first time he had been violent, he had attacked my son, and that changed everything in my mind. It wasn't me any more." *Id.* Defense counsel then inquired, "[s]o you were gone from the house for two weeks because you were concerned for your own safety?" *Id.* Mrs. Rossing responded in the affirmative.

{¶ 23} Defense counsel also questioned Mrs. Rossing about her actions after she obtained the CPO on December 12, 2017, asking, "had your son been staying with you? Had you both left the house? (Tr. at 158.) Mrs. Rossing averred that she and C.R. left the

residence after the CPO was filed, explaining, "[i]t was a whole different scenario once he attacked our son." *Id.*   Counsel also elicited testimony confirming that between December 12 and December 19, 2017, she went to her home three times accompanied by the police.  (Tr. at 159.)   During cross-examination about why she believed appellant was aware she had obtained a CPO against him, Mrs. Rossing averred that "after 23 years, [he] knows I'm not going to let you throw knives at my child and not do anything."  (Tr. at 164.)

{¶ 24}  Concerning the events leading up to the 911 call on December 19, 2017, defense counsel inquired about the condition of the home, which prompted Mrs. Rossing to reiterate that it was in "disarray," had been "ransacked," that "[a]nything that was of any value" had been removed, and that the utilities had been turned off. (Tr. at 175-76.) Defense counsel also questioned Mrs. Rossing about her statement during the 911 call that appellant had accessed her financial records without her authorization and that he was going to ruin her financially.  Although Mrs. Rossing conceded that she had no "proof" that appellant had access to her financial records, she averred that she was "fearful" that he would do so.  (Tr. at 178.)

{¶ 25}  Defense counsel also questioned Mrs. Rossing about whether she told Officer Rogers about appellant's possible whereabouts so that he could be served with the CPO.  In response, Mrs. Rossing stated, "I don't recall if that was part of the conversation.  It might have been.  Because [appellant] had told me for years what he would do, that there's no need for me to divorce him, because he would move to his mother's house, quit his job so he wouldn't have to pay child support because his mother would take care of him."  (Tr. at 185.) She further averred, "he would make sure he used up all of the money that he did have in lawyer's fees, so that there would be nothing left."  *Id.*

{¶ 26}  Defense counsel also asked Mrs. Rossing about the state of the parties' marriage leading up to her departure from the home in early December 2017.  Specifically, defense counsel asked if she and appellant were estranged and whether she had ever told him she wanted a divorce.  In response, Mrs. Rossing testified that she had done so "[u]sually after a violent episode or definitely after he's gone for days or an affair for sure[.]" (Tr. at 204.)

{¶ 27}  On redirect examination, the prosecution questioned Mrs. Rossing about her cross-examination testimony that appellant had threatened her that if she left him he would

hire an attorney and bankrupt himself. Mrs. Rossing reiterated that appellant "said he would drag it on until all of the money was gone and would never share anything, just like he never did." (Tr. at 213.) On recross-examination, defense counsel asked about the circumstances prompting appellant's threats in this regard, which elicited the following response, "[w]henever I did bring up a divorce. As I said earlier, he would tell me I might as well stay where I am, because he would make sure that I would never get any child support, because he wasn't going to let the government tell him what he should pay for his own child." (Tr. at 216.) She continued, "[h]e told me he would drag * * * the divorce forever and ever so any funds that we had, what he had accumulated because I had to pay everything, there would be nothing to split. He would just exhaust everything. * * * I might as well just stay where I am because it would be futile. I wouldn't be able to take [C.R.] and go anywhere." (Tr. at 216-17.)

{¶ 28} During recross-examination about her decision to leave the house in early December 2017, Mrs. Rossing testified that she did so because appellant "would get up in the middle of the night and pummel me with pillows" and that she had to find "someplace else where I could actually sleep through the night without fear." (Tr. at 217.)

{¶ 29} Regarding Officer Rogers' testimony, the prosecution inquired about Mrs. Rossing's demeanor when he arrived at her home on December 19, 2017. Officer Rogers testified that Mrs. Rossing was "upset" and "scared" and "very afraid." (Tr. at 227.) When asked by the prosecution if he had encountered Mrs. Rossing prior to December 19, 2017, Officer Rogers averred that he and another officer had accompanied her to her house to retrieve property because "she was afraid of her husband." (Tr. at 238.) During cross-examination about why Mrs. Rossing sought police intervention to retrieve property from her home, Officer Rogers reiterated that "[s]he was afraid of her husband." (Tr. at 244.)

{¶ 30} In addition to the foregoing evidence, the prosecution discussed Mrs. Rossing's fear of appellant in its closing argument, stating that Mrs. Rossing "lived in fear for 16 years in a marriage, for 23 years of a relationship * * * and finally had enough. She came to the courthouse and she asked for help." (Tr. at 321.) In its rebuttal argument, the prosecution reiterated that Mrs. Rossing obtained the CPO because she was afraid of appellant.

{¶ 31} Assuming without deciding that the foregoing evidence was either irrelevant under Evid.R. 402 and/or inadmissible bad character evidence under Evid.R. 404(A) and (B), and that defense counsel was deficient in his performance by failing to object to and/or eliciting this evidence, we conclude that appellant is unable to demonstrate that such errors were prejudicial. This is so because even if counsel had objected to and/or had not elicited the testimony at issue, there is not a reasonable probability, under the facts of this case, that the outcome of the trial would have been different.

{¶ 32} As noted above, R.C. 2919.27(A)(1) prohibits a person from recklessly violating a validly issued protection order. In addition, R.C. 2919.27(D) provides that the prosecution need not prove that the protection order was served on the defendant if it proves both that a law enforcement officer informed defendant of the issuance of the protection order and that the defendant recklessly violated the terms of the order. Pursuant to R.C. 2901.22(C), "a person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C) further provides, "[a] person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist."

{¶ 33} The parties stipulated to the validity of the CPO, that it was in effect on December 19, 2017, and that the text messages sent by appellant on December 19, 2017 were authentic. It was undisputed that appellant was not served with the CPO prior to December 19, 2017, the date of the alleged violation. Thus, the matter resolved to whether the prosecution proved that appellant had been informed by a law enforcement officer of the issuance of the CPO, and, if so, whether he thereafter recklessly violated the terms of the CPO by sending the text messages.

{¶ 34} The prosecution presented evidence proving both elements. The prosecution proved that appellant had been informed by a law enforcement officer of the issuance of the CPO via Officer Rogers' uncontroverted testimony that he advised appellant of the CPO during the cell phone call on December 19, 2017. Further, the text messages appellant sent Mrs. Rossing after receiving the phone call from Officer Rogers establish that appellant was aware of the CPO. Indeed, appellant implored Mrs. Rossing to refrain from having him

arrested. He further averred that he had not been served with the CPO and that he would conform to the law. The prosecution further proved that appellant recklessly violated the CPO via introduction of the text messages appellant sent to Mrs. Rossing after Officer Rogers informed him of the CPO. The CPO expressly prohibited appellant from contacting Mrs. Rossing by telephone.

{¶ 35} We note that appellant has failed to challenge his conviction on either sufficiency or manifest weight of the evidence grounds. Appellant's only argument on appeal is that the jury's guilty verdict was tainted by the challenged evidence. We disagree with this premise.

{¶ 36} The record is devoid of any indication that the jury considered the challenged evidence in finding appellant guilty of the charged offense. The trial court instructed the jury that it was "to apply the law as it is given to you." (Tr. at 351.) The trial court set forth the elements of the crime, defined those elements, and instructed the jury that it could not find appellant guilty unless the prosecution proved the elements beyond a reasonable doubt. The trial court also instructed the jury that it "must not be influenced by any consideration of sympathy or prejudice," and that it was to "[c]onsider all of the evidence and make your findings with intelligence and impartiality and without bias, sympathy, or prejudice, so that both the State of Ohio and the Defendant will feel that their case was fairly and impartially tried." (Tr. at 357.) "As an appellate court, we must presume that the jury followed the trial court's instructions." *State v. Brown,* 10th Dist. No. 15AP-935, 2016-Ohio-7944, ¶ 18, citing *State v. Walburg,* 10th Dist. No. 10AP-1087, 2011-Ohio-4762, ¶ 53. In our view, the instructions provided by the trial court in this case were sufficient to ameliorate any risk of jury impartiality, bias, or sympathy for Mrs. Rossing against appellant in arriving at their guilty verdict. The record does not contain any questions from the jury indicating that it did not understand the trial court's instructions or suggesting that it was unduly influenced by the challenged testimony. Further, after the jury's verdict was announced, defense counsel requested that the individual jurors be polled; each confirmed his or her guilty verdict without hesitation.

{¶ 37} For the foregoing reasons, we find that appellant has failed to demonstrate that he was prejudiced by his counsel's conduct such that he was deprived of a fair trial. As

such, we cannot conclude that appellant received ineffective assistance of counsel. Accordingly, we overrule appellant's sole assignment of error.

{¶ 38} Having overruled appellant's sole assignment of error, we hereby affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

LUPER SCHUSTER and BEATTY BLUNT, JJ., concur.